WESTERN INV. CO. v. KISTLER.

No. 840, Ind. T.    Opinion Filed September 12, 1908.

(97 Pac. 588.)

**INDIANS—Creeks—Allotments—Alienation of Surplus—Liability for Debts.** The removal of restrictions by the Secretary of the Interior, permitting the surplus allotment of a duly enrolled Creek Indian by blood to be alienated by the allottee or his heirs before the expiration of five years from the date of the approval of the Creek Supplemental Agreement, which became effective on the 8th day of August, 1902 (Act June 30, 1902, c. 1323, 32 Stat. 500), did not subject such allotment to involuntary incumbrances, taking, or sale to secure or satisfy any debt or obligation of the allottee incurred prior to the removal of such restrictions.

(Syllabus by the Court.)

*Appeal from the United States Court for the Western District of the Indian Territory, at Muskogee; William R. Lawrence, Judge.*

Action by Ernest L. Kistler against the Western Investment Company and others. Judgment for plaintiff, and defendant investment company appeals. Affirmed.

*Richard Clyde Allen* and *James Clark Pinson,* for appellant.

*William T. Hutchings, George A. Murphey,* and *William P. Z. German,* for appellee.

KANE, J. This was a suit brought by the appellee, plaintiff below, against the appellant, defendant below, to remove a cloud from the title of certain real estate situated in the Creek Nation. As the case turns upon the ruling of the court below in overruling a demurrer to plaintiff's complaint, we set out the complaint in full:

"Comes now the plaintiff, Earnest L. Kistler, and for cause of complaint against the defendants alleges that said defendant Western Investment Company is a corporation duly organized and existing under and by virtue of the laws in force in the Indian Territory, and has its principal place of business at Coweta, Indian Territory, and that the defendant the First National Bank of Muskogee, Indian Territory, is a corporation organized and doing business under the national banking laws of the United States with its principal place of business at Muskogee, Indian Territory, and that both the plaintiff and defendant the First National Bank of Muskogee, Indian Territory, are residents of Muskogee, Indian Territory, and all the parties hereto are residents of the Western judicial district of the Indian Territory, wherein the lands which are the subject-matter of this suit are situate, and that Muskogee is the nearest court town to the residence of the parties of this suit. Plaintiff alleges that he is the owner in fee simple and in possession of the south half of the northwest quarter, and lot three(3), being northeast quarter of northwest quarter of section five, township eighteen north, range fifteen east, in the Creek Nation, Indian Territory, and that he became such owner of this land on the 25th day of June, 1906, by deed of conveyance from John C. Escoe and Anna Escoe, his wife; the said land having been a portion of the surplus allotment of the said John C. Escoe, plaintiff's grantor. Plaintiff alleges that the defendant Western Investment Company has and holds a judgment against John C. Escoe in the sum of $1,138.18 obtained in the United States court at Wagoner, in the Western judicial district of the Indian Territory, on December 21, 1904, and that said judgment is an apparent lien on said real esate; that on the 27th day of April, 1906, a writ of *fieri facias* issued out of said court

on said judgment, directing the United States marshal to levy upon the property of the said John C. Escoe, defendant in said judgment and plaintiff's grantor of said land herein described; and that under and by virtue of the writ the United States marshal did, on May 21, 1906, attempt to levy said writ on the lands herein described, and did, on the 25th day of June, 1906, attempt under said writ, after advertising said land for sale, to sell the same at public sale, and the defendant Western Investment Company pretended at said public sale to purchase said lands, and bid therefor the sum of $275, and was then and there declared by the said United States marshal as being the highest and best bidder for said land, and the said land was by the United States marshal struck off to the said Western Investment Company, reciting that the said defendant would be entitled to a deed of conveyance on the 25th day of June, 1907, unless said land should be redeemed sooner.

"Plaintiff alleges: That said land is a part of the allotment of John C. Escoe, a Creek Indian by blood and duly enrolled as such. That his restrictions against the alienation of said land were removed by the Secretary of the Interior on February 6, 1906, since which time he has been duly authorized to sell, alienate, and convey the same; but no approval has been procured of the Secretary of the Interior to take or sell said land to satisfy any debt or obligation of the allottee, and that said land has been and still is exempt from any judgment obtained against the said John C. Escoe under and by virtue of the treaty then and now in force in the Indian Territory, and that the attempt of the defendant to procure the enforcement of said judgment and the sale of said lands thereunder slanders the plaintiff's title and clouds the same with an apparent lien, and that it is an attempt to take said land to satisfy a debt and obligation contracted and incurred before the expiration of five years from the date of the approval of the Supplemental Agreement on August 8, 1902, without the approval of the Secretary of the Interior, and for a debt or obligation contracted and incurred prior to the removal of the allottee's restrictions by the Secretary of the Interior for sale by himself. Plaintiff alleges: That said judgment, as well as the attempted sale hereinbefore described, is a cloud upon his title and incumbers the same, to his damage. That the patent to the allottee was issued by the government and delivered to the allottee, John C. Escoe, for said land, on August 28,1903, after the Supplemental Treaty took

effect exempting said lands from being taken to secure or satisfy any debt or obligation incurred before the expiration of five years from the date of the approval of the Supplemental Treaty, which was August 8, 1902; and said indebtedness was incurred after said date.

"Plaintiff alleges that the defendant the First National Bank of Muskogee, Indian Territory, has and holds a judgment against J. C. Escoe, the former owner of said land, and the allottee thereof, recovered by it in the United States court, at Wagoner, on May 7, 1906, and that said judgment is an apparent lien on the real estate herein described, and that the said judgment is not a lien on said land, for the reason that it is upon a debt and obligation contracted before the expiration of five years from the date of the approval of the Supplementary Treaty on August 8, 1902, and after said date and for a debt and obligation contracted and incurred prior to the removal of the allottee's restrictions, and said land is exempt from said judgment by reason thereof.

"Wherefore, premises considered, plaintiff prays that the apparent lien on said judgments as a cloud upon his title be removed, and that the court decree that the said judgments obtained against the defendant John C. Escoe are not a lien upon the land herein described, and that the attempted sale of said land is null and void, and that the court decree a cancellation of said certificate and set aside said sale, and that the plaintiff recover his costs herein laid out and expended, and for all other proper relief."

To the foregoing complaint the defendant filed a general demurrer, which the court overruled, and, the defendant electing to stand upon its demurrer, rendered judgment in favor of plaintiff on his bill, granting the relief prayed for therein, entering judgment for costs against the defendant. From this judgment the defendant appealed to the Court of Appeals of the Indian Territory, and the case was transferred to this court under the terms of the Enabling Act and the Schedule to the Constitution.

The question presented by the record involves the construction of the first clause of section 16 of the Creek Supplemental Treaty (Act June 30, 1902, c. 1323, 32 Stat. 503), which reads as follows:

"Lands allotted to citizens shall not in any manner whatever
Vol. 22—15

or at any time be incumbered, taken, or sold to secure or satisfy any debt or obligation nor be alienated by the allottee or his heirs before the expiration of five years from the date of the approval of this Supplemental Agreement, except with the approval of the Secretary of the Interior."

The contention of counsel for appellant is that upon the removal of restrictions upon alienation by the allottee by the Secretary of the Interior on the 6th day of February, 1906, the judgment rendered against the allottee became a lien upon his allotment, and that the sale thereon to satisfy said judgment vested a good title in the purchaser. We are unable to gather such a meaning from the language of the act. We believe that Congress, by the first ·clause of section 16, *supra,* intended to protect the lands allotted to citizens of the Creek Nation against involuntary incumbrances or forced sales of any kind to secure or satisfy any debt or obligation for a period of five years, unless the Secretary of the Interior approved such involuntary incumbrance, sale or taking. This part of the provision is not a restriction upon the allottee or his heirs, but is in effect an exemption law to protect his surplus allotted lands from forced sale for the period of five years to satisfy any debt or obligation incurred while the exemption was in operation. The five-year time limit applies to this as well as to the second clause containing the restriction against alienation by the allottee or his heirs. We believe, also, that both clauses are qualified by the last part of the act, reading, "except with the approval of the Secretary of the Interior," and that each embraces a separate and distinct limitation upon the disposal of his allotted lands. The first has relation to forced incumbrances, sales, or takings to secure or satisfy any debt, and the second to voluntary alienation by the allottee or his heirs. Each limitation continues for the period of five years from the date of the approval of the Supplemental Agreement, and each may be avoided before that time by the approval of the Secretary of the Interior; but the removal of restrictions upon voluntary alienation by the allottee

or his heirs does not subject the land to the involuntary incumbrances, sales, or takings contemplated by the first clause.

Counsel for appellant contend that, from the fact that Congress, by an act passed on the 3d day of March, 1901 (31 Stat. 1447, c. 868), made these Indians full citizens of the United States, it had no power to extend the restrictions provided for by the act of June 30, 1902. This position is untenable. At the time of the enactment of the Supplemental Treaty Congress had full power to legislate for the Indian Territory, and it seems to us that the passage of an exemption law, such as we construe the first part of section 16, *supra,* is to provide an exemption law for the protection of the Indians, and not a restriction upon voluntary alienation by the allottee or his heirs, and that until the expiration of five years, or until the approval of the Secretary of the Interior, his allotment cannot be incumbered, taken, or sold to satisfy any debt or obligation, even though the five-year restriction upon voluntary alienation by the allottee had been removed by the Secretary of the Interior. The exemption clause in section 16 is not different in its effect from the exemption laws of most of the states. The lands protected by such exemption laws are always subject to voluntary alienation; but this does not mean that a creditor, without the consent of the owner, may incumber, take, or sell such lands to secure or satisfy any debt or obligation incurred by him.

Taking this view of the law, it follows that the Indian allottee held the land exempt from the lien of the judgment under which it was sold to the appellant, and it was exempt when it was sold under the order of sale.

The judgment of the court below is affirmed.

All of the Justices concur, except Dunn, J., who concurs in the conclusion, but not in all the reasoning.