In re Washington's Estate, French, Adm'r, v. Washington et al.

## In re WASHINGTON'S ESTATE, FRENCH, *Adm'r,* v. WASHINGTON *et al.*

### No. 2306.   Opinion Filed December 7, 1912.

#### Rehearing Denied January 7, 1913.

(128 Pac. 1079.)

**INDIANS—Debts—Sale of Land—Indian Allotment.** The allotment of a citizen of the Cherokee Nation or Tribe of Indians is not subject to involuntary sale for the payment of debts contracted by the allottee before the expiration of five years after the date of ratification of the Cherokee Agreement.  Act July 1, 1902, c. 1375, 32 St. at L. 717, secs. 13, 14.

(Syllabus by Brewer, C.)

*Error from District Court, Washington County;*
*John J. Shea, Judge.*

Judicial settlement of the estate of Mary Washington, deceased.  From an order denying the petition of Norman French, administrator, to sell certain real estate to pay debts on objection of George Washington and others, minor heirs of decedent, etc., he brings error.  Affirmed.

*Chas. W. Pennel* and *George & Campbell,* for plaintiff in error.

*B. A. Lewis* and *T. H. Reeve,* for defendants in error.

Opinion by BREWER, C.   This appeal is prosecuted by Norman French, as administrator of the estate of Mary Washington, as plaintiff in error, against the heirs of Mary Washington, deceased, as defendants in error.

It appears from the record that Mary Washington, an adult full-blood Delaware citizen of the Cherokee Nation, died on the 25th day of May, 1906, intestate, in what is now Washington county, Okla.  On June 27, 1907, Norman French was duly appointed by the United States court having at the time jurisdiction as administrator of her estate, which consisted of her allotment as such Cherokee Indian of the N. E. ¼ of section 29, township 28, range 13, containing 160 acres of land, and also of

certain personal estate amounting approximately to $200. A number of claims aggregating between $1,100 and $1,200, on account of debts contracted by the allottee in her lifetime, were filed and allowed by the administrator. Norman French, as administrator, petitioned the county court, to which this administration had been transferred after statehood, to sell the real estate for the purpose of paying the debts allowed against the estate by the administrator. This sale was ordered, but the order was afterwards set aside by the court on the 28th day of June, 1909, on the ground that the allotment of Mary Washington sought to be sold was not liable for the payment of debts contracted during her lifetime, and prior to the time at which such lands were subject to alienation, and thereupon ordered the administrator to deliver up the possession of said allotment to the guardian of the minor heirs of the said allottee, together with moneys in his hands, received as the rents, issues, and profits of the land. The administrator was ordered to apply the personal estate in his hands, not the issues and profits of the allotment, to the payment of the costs of administration and to claims allowed against the estate. On an appeal to the district court the order and judgment of the county court was sustained, and the administrator brings the cause here for review from the district court.

The main question here, and the only one necessary to be considered is, Can the lands of a Cherokee citizen who died prior to the expiration of five years from the ratification of the Cherokee Agreement be taken or subjected to involuntary sale for the purpose of paying debts contracted by such citizen within such period? The provisions of the Cherokee Agreement involved are sections 13 and 14 of an Act of Congress approved July 1, 1902 (32 St. at L. 716, c. 1375), which was ratified by the Cherokee Tribe August 7, 1902. Section 13 thereof, after providing for the designation of a homestead for which separate certificate shall issue, and which shall be inalienable during the lifetime of the allottee, and not exceeding 21 years from the date of certificate of allotment, adds the following clause:

"During the time said homestead is held by the allottee the

same shall be nontaxable and shall not be liable for any debt contracted by the owner thereof while so held by him."

And section 14 is as follows:

"Lands allotted to citizens shall not in any manner whatever or at any time be incumbered, taken, or sold to secure or satisfy any debt or obligation, or be alienated by the allottee or his heirs, before the expiration of five years from the date of the ratification of this act."

The debts contracted by this allottee, and for the payment of which it was sought to sell the allotment, were obligations incurred within five years after the ratification of the Cherokee Agreement. Likewise was the death of the allottee within such period. We do not recall wherein this particular provision of the Cherokee Agreement has been considered and construed by this court, but a provision of the Creek Supplemental Agreement (Act June 30, 1902, c. 1323, 32 St. at L. 500), almost identical in terms, has been considered and construed in the case of *Western Investment Co. v. Kistler,* 22 Okla. 222, 97 Pac. 588, and the conclusion reached by the court in that case concludes the question here against the contentions of the plaintiff in error. The portion of the Creek Supplemental Agreement (32 St. at L. 500) construed in the Kistler case provides as follows:

"(16)   Lands allotted to citizens shall not in any manner whatever, or at any time, be encumbered, taken, or sold to secure or satisfy any debt or obligation nor be alienated by the allottee or his heirs before the expiration of five years from the date of the approval of this supplemental agreement, except with the approval of the Secretary of the Interior."

In so far as the question here involved is concerned, this provision is identical in meaning with section 14 of the Cherokee Agreement, *supra,* and what the court said in the Kistler case is entirely applicable and controlling in this case. In the body of the opinion in that case, after quoting from the Creek Supplemental Agreement as we have here, the court says:

"We believe that Congress by the first clause of section 16, *supra,* intended to protect the lands allotted to citizens of the Creek Nation against involuntary incumbrances or forced sales of any kind to secure or satisfy any debt or obligation for a

period of five years, unless the Secretary of the Interior approved such involuntary incumbrance, sale, or taking. This part of the provision is not a restriction upon the allottee or his heirs, but is in effect an exemption law to protect his surplus allotted lands from forced sale for the period of five years to satisfy any debt or obligation incurred while the exemption was in operation. The five-year time limit applies to this as well as to the second clause containing the restriction against alienation by the allottees or his heirs. We believe, also, that both clauses are qualified by the last part of the act, reading, 'except with the approval of the Secretary of the Interior,' and that each embraces a separate and distinct limitation upon the disposal of his allotted lands. The first has relation to forced incumbrances, sales, or takings to secure or satisfy any debt, and the second to voluntary alienation by the allottee or his heirs. Each limitation continues for the period of five years from the date of the approval of the Supplemental Agreement, and each may be avoided before that time by the approval of the Secretary of the Interior; but the removal of restrictions upon voluntary alienation by the allottee or his heirs does not subject the land to the involuntary incumbrances, sales, or takings contemplated by the first clause."

For a construction of the Choctaw and Chickasaw Agreement, known as the "Atoka Agreement" (Act June 28, 1898, c. 517, 30 St. at L. 495), and the Supplemental Agreement (Act July 1, 1902, c. 1362, 32 St. at L. 641), involving the allotment of a Choctaw Indian by blood, see *Redwine et al. v. Ansley et al.*, 32 Okla. 317, 122 Pac. 679, wherein it was held that the allotment was not subject to be sold to pay debts contracted by the allottee in his lifetime, but passed, unincumbered, to his heirs. For a construction of the same agreements, as relating to the allotment of a Choctaw freedman, a citizen of those nations not of Indian blood, see *In re Davis' Estate,* 32 Okla. 209, 122 Pac. 547, wherein it was held that "the allotted lands of a deceased Choctaw freedman are not liable for any debt or obligation, of any character, contracted prior to the time at which such allotment may be alienated; hence cannot be sold by order of the county court for such purpose." A reading of the cases above will show the reasoning upon which the decisions are based, and it is unnecessary to repeat them here. The court held properly under the facts of this case that the allotment involved could not

be sold to provide a fund for the payment of debts contracted by the allottee within five years of the date of the ratification of the Cherokee Agreement.

Therefore the case should be affirmed.

By the Court: It is so ordered.