## EASTERN OIL CO. v. HARJO.

No. 6285.   Opinion Filed May 9. 1916.

(157 Pac. 921.)

INDIANS—Lands—Administration of Estate—Liability for Debts. The allotment of a full-blood Creek Indian who died in April, 1910, intestate, passed to his heirs free from the debts created by the allottee before his death, and the probate court did not acquire jurisdiction to sell the allotment to pay the debts, and a deed executed by the administrator of the estate of the allottee, upon a sale made to pay the debts of the deceased allottee, is void, and the grantee in said deed acquires no title as against the heirs of the allottee.

(Syllabus by Hooker, C.)

*Error from District Court, Creek County;*
*Wade S. Stanfield, Judge.*

Action by Mitchell Harjo, by C. A. Wallace, guardian, against the Eastern Oil Company. From the judgment, the Oil Company brings error. Affirmed.

*Sherman, Veasey & O'Meara,* for plaintiff in error.

*F. H. Reed* and *McDougal, Lytle & Allen,* for defendant in error.

Opinion by HOOKER, C. The land involved in this suit was the allotment of a full-blood Creek Indian who died April 28, 1910, intestate, leaving defendant in error as his sole heir. After his death the county court assumed jurisdiction of his estate, and sold his allotment for the purpose of paying some debts created by decedent during his lifetime, and the expenses incident to the administration of his estate, to S. and L., who executed an oil and gas lease thereon to M., which lease was afterwards assigned to plaint ff in error. The defendant in error contends that this lease is void because the county court did not have jurisdiction to sell this allotment in the probate proceedings had upon the estate of deceased, and that the lease, by reason of a surrender clause therein contained, was a unilateral contract. We will consider only the first proposition presented by this record, and that is, Was this allotment subject to involuntary judicial sale, and was it liable, or could it be subjected to the indebtedness of the allottee incurred prior to his death? Paragraph 7 · of the act of Congress approved March 1, 1901, and ratified by the Creek Nation May 25, 1901 (31 Stat. L. U. S. 861, c. 676), provides:

"Lands allotted to citizens hereunder shall not in any manner whatsoever, or at any time, be incumbered, taken, or sold to secure or satisfy any debt or obligation contracted or incurred prior to the date of the deed to the allottee therefor, and such lands shall not be alienable by the allottee or his heirs at any time before the expiration of five years from the ratification of this agreement, except with the approval of the Secretary of the Interior."

In the case of *Western Investment Co. v. Kistler*, 22 Okla. 222, 97 Pac. 588, this court, in considering the first part of section 16 of the Creek Supplemental Agreement above quoted, says:

"Lands allotted to citizens shall not in any manner whatever or at any time be incumbered, taken, or sold to secure or satisfy any debt or obligation nor be alienated. by the allottee or his heirs before the expiration of five years from the date of the approval of this supplemental agreement, except with the approval of the Secretary of the Interior. *. * *"

This court, also, in 32 Okla. at page 209, 122 Pac. 547, *In re Davis' Estate,* held:

"1.   The allotted lands of a deceased Choctaw freedman are not liable for any debt or obligation, of any character, contracted prior to the time at which such allotment may be alienated; hence cannot be sold by order of the county court for such purpose.

"2.   Section 15 of the act of July 1, 1902, providing that lands allotted to members and freedmen of the Choctaw and the Chickasaw Nations shall not be 'affected' or 'incumbered' by any deed, debt, or obligation, of any character, contracted prior to the time at which said land may be alienated, means that there shall be no burden on the title or charge against such allotment, and that the same shall in no event become liable for any debt or obligation contracted prior to the removal of restrictions.

"3.   Belton Davis, a Choctaw freedman allottee, died intestate December 26, 1907, possessed of an allotment of lands in the former Chickasaw Nation. At the time of his death, he was indebted in a sum largely in excess of the value of his personal estate, and upon application of the administrator of the estate the county court made an order, directing the sale of said allotment, for the purpose of paying the debts of the estate contracted during the lifetime of the allottee. *Held,* that the court erred in directing the sale."

Also, this court, in the case of *Washington's Estate,* 36 Okla. 559, 128 Pac. 1079, said:

"The allotment of a citizen of the Cherokee Nation or Tribe of Indians is not subject to involuntary sale for the payment of debts contracted by the allottee before the expiration of five years after the date of ratification of the Cherokee Agreement.  Act July 1, 1902, c. 1375, 32 Stat. at L. 717, secs. 13, 14."

And in the body of the opinion the court said:

"For a construction of the Choctaw and Chickasaw Agreement, known as the 'Atoka Agreement' (Act June 28, 1898, c. 517, 30 Stat. at L. 495), and the Supplemental Agreement (Act July 1, 1902, c. 1362, 32 St. at L. 641), involving the allotment of a Choctaw Indian by blood, see *Redwine et al. v. Ansley et al.*, 32 Okla. 317, 122 Pac. 679, wherein it was held that the allotment was not subject to be sold to pay debts contracted by the allottee in his lifetime, but passed, unincumbered, to his heirs.  For a construction of the same agreements, as relating to the allotment of a Choctaw freedman, a citizen of those nations not of Indian blood, see *In re Davis' Estate*, 32 Okla. 209, 122 Pac. 547, wherein it was held that 'the allotted lands of a deceased Choctaw freedman are not liable for any debt or obligation, of any character, contracted prior to the time at which such allotment may be alienated; hence cannot be sold by order of the county court.' "

By the provisions of the act of Congress of April 26, 1906 (Act April 26, 1906, c. 1876, 34 Stat. 137), the restrictions and exemptions which applied to allotments such as the one in controversy were continued and extended for a period of 25 years, and were therefore in full force and effect on the date of the death of the allottee in this case.  From a consideration of the authorities we are of the opinion that an involuntary judicial sale had from the county court by probate proceedings, wherein this allotment was sold for the purpose of satisfying an indebtedness due at the time of the death of the allottee, and

incurred by him prior thereto, did not operate so as to divest the title from the defendant in error, nor did it operate so as to invest in S. and L. any right, title, or interest thereto. And we are further of the opinion that the deed made by the administrator and all the proceedings had in said cause pertaining to the sale of this allotment were null and void, and that the title held by the allottee at the time of his death passed to the defendant in error as his sole and only heir, free and unincumbered from any debt or obligation.

The judgment of the trial court is affirmed.

By the Court: It is so ordered.