## FULP et al. v. SQUIRES et al.

No. 9063—Opinion Filed Feb. 17, 1920.

(Syllabus by the Court.)

**1. Indians—Sale of Allotment by Administrator—Suit by Heirs to Recover — Defenses.**

B., a citizen of the Creek Tribe of Indians, had allotted to him during his lifetime certain lands. Upon his death, F. was appointed administrator of the estate and also guardian of the minor heirs of the said deceased. Acting in his dual capacity as administrator and guardian, F. applied to the county court for an order allowing him to sell the allotment of the deceased. An order was secured from the county court authorizing the sale; the sale was made and confirmed; F., by order of the county court, was directed to execute and deliver a deed to the purchaser as administrator. The deed was executed in his capacity as administrator and acknowledged in such capacity. The proceeds of the sale were distributed among the respective heirs of the deceased. In an action brought by the heirs for the possession of the allotment of the deceased, instituted more than five years after the sale and the recording of the deed, the defendants interposed as a defense that the lands had been sold by F., not as administrator, but as guardian, and sought to have the order of the county court confirming the sale, and also the deed, reformed to show that the sale was made by F. as guardian, and not as administrator. Held, that the answer containing the above averments did not state facts sufficient to entitle defendants to equitable relief.

**2. Limitation of Actions—Infants—Judicial Sales—Action to Recover Realty.**

By paragraph 2 of section 4655, Rev. Laws 1910, it is provided that an action for the recovery of real property, sold by executors. administrators, or guardians upon an order or judgment of the court directing such sale, brought by the heirs or devisees of the deceased person, or the ward, or his guardian, or any other person claiming under any or either of them by the title acquired after the date of the judgment or order, must be brought within five years after the date of the recording of the deed made in pursuance of the sale. Held, that one who was a minor at the time the cause of action accrued could bring his action within two years after the disability is removed.

**3. Same—Judgment on Pleadings.**

Record examined, and held, the trial court did not commit error in rendering judgment on the pleadings herein.

Error from District Court, Creek County; R. W. Higgins, Assigned Judge.

Action by Lucy Squires and others against J. A. Fulp, administrator, and others. From a judgment in favor of certain minor plaintiffs, defendants bring error. Affirmed, on rehearing.

James J. Mars, for plaintiffs in error.

Van H. Albertson and T. L. Blakemore, for defendants in error.

PITCHFORD, J. This action was commenced in the district court at Sapulpa, Creek county, Okla., by Lucy Squires et al., and George M. McDaniel, as next friend and guardian ad litem for Wayena Bucktrot et al., against J. A. Fulp, administrator of the estate of William F. Collins, deceased, Beulah B. Fulp, Cecil C. Collins, and Arthusa Collins. For convenience, the parties will be designated herein as they appeared in the trial court. The plaintiffs, except Madie Wydie Davis, nee Bucktrot, were children and heirs of Bucktrot, a deceased Creek citizen. The defendants Beulah B. Fulp and Cecil C. Collins were and are the children and heirs of Wm. F. Collins, deceased, Arthusa Collins being the widow of the deceased; and J. A. Fulp was administrator of the estate of Wm. F. Collins and husband of Beulah B. Fulp.

The action was brought by the plaintiffs to recover the allotment of Bucktrot, deceased, their father and husband, to wit, the northwest quarter of section 35, township 17 north, range 10 east, Creek county, Okla. The defendants, by leave of court, filed a second amended answer, and set up as their first defense a general denial; and for their second and special defense, as to the minor plaintiffs, they alleged that the defendant J. A. Fulp was duly appointed guardian by the county court of Creek county, qualified as required by law, and acted as the guardian for the said minors, Wayena, Sam Green, Conzey, Saggie and Angee Bucktrot; that he as such guardian filed his petition in the county court of Creek county on the 10th day of June, 1908, praying for the sale of the interest of said minors in and to said real estate, to wit, the northwest quarter of section 35, township 17 north, range 10 east, in Creek county, Okla.; that said petition was set down for hearing thereafter and was regularly heard by the county court of Creek

county on the 11th day of July, 1908; that said county court did, on the 11th day of July, 1908, issue an order authorizing and directing the said J. A. Fulp, as such guardian of said minors, to sell said land at private sale to the highest bidder as prayed for in said petition; that thereafter, the time, place, and purpose of said sale was duly advertised as required by law, and said land was sold to one Wm. F. Collins, who was the highest bidder therefor, for the sum of $800; that said guardian filed his return of sale in said court on the 15th day of August, 1908, and after advertising the time and place of hearing said return of sale, the same was heard by the court and was duly approved by order confirming said sale made by said county court on the 26th day of September, 1908, said guardian being by the court ordered and directed to make a deed to said Wm. F. Collins in pursuance of said order and confirmation and decree of sale; that said deed was made by said J. A. Fulp on the 26th day of September, 1908, and delivered to said Wm. F. Collins, who paid the sum of $800 consideration for the said land to said guardian under the direction of the court; that the said J. A. Fulp, as guardian of said minors, by inadvertence and mistake of the draftsman who prepared the said deed from him to Wm. F. Collins, described himself in said deed as administrator instead of guardian; that the order confirming said sale referred to said Fulp as administrator of the estate of Bucktrot, instead of as guardian of the minor heirs of said Bucktrot, and the court below was asked to correct said mistake; that the said J. A. Fulp was in fact administrator of the estate of Bucktrot, deceased, as well as guardian of his heirs and minor children.

The answer further alleged that on the 7th day of October, 1913, Lucy Squires, nee Bucktrot, executed and delivered a deed for all of her interest in said land to the defendants Arthusa Collins, Cecil Collins, and Beulah B. Fulp, said deed having been approved by the county court of Creek county, Okla., the court having jurisdiction of the estate of said deceased, on the 15th day of January, 1915; that on the 21st day of March, 1914, Madie Wydie Davis and Nannie Fulsom, nee Bucktrot, executed and delivered to the defendant Arthusa Collins their deed conveying all of their interest in said land, said deed being made on the 5th day of January, 1915, and duly approved by the county court of Creek county.

The prayer of the answer was that the court find and declare and decree that the said guardian's sale of said land by the said J. A. Fulp, as guardian, was regular; that his deed to the said Wm. F. Collins, as such guardian, but in which he is named as administrator, be decreed as valid and as vesting the title to said land in the said Wm. F. Collins; that said deed be corrected, cancelling the word "administrator" following the name of J. A. Fulp, as indicating his official capacity in said deed, and inserting in lieu of the word "administrator" the word "guardian," so as to comport with the facts as alleged in the amended answer and as shown by the pleadings in said sale by the said Fulp as such guardian; and that the decree or order confirming the sale by the county court confirming the sale of said lands by the said J. A. Fulp as such guardian be corrected in this, that the word "administrator," as descriptive of the capacity in which the said J. A. Fulp acted in making said sale, be cancelled and that there be inserted after the name of the said J. A. Fulp, in lieu of the word "administrator," the word "guardian" to comport with the facts as alleged in the answer as shown by the pleadings in said sale of said land by the said Fulp as such guardian.

When the case came on for trial, both the plaintiffs and the defendants moved the court for judgment on the pleadings. The court sustained the motion of the minor plaintiffs for judgment and entered judgment in favor of the said minor plaintiffs for an undivided one-eighth interest each in the lands in controversy; overruled the motion of the adult plaintiffs and sustained the motion of the defendants for judgment on the pleadings as to the adult plaintiffs; and overruled the motion of the defendants as to the minor plaintiffs. The court further rendered judgment setting aside and holding for naught the deed signed by J. A. Fulp, as administrator, and refusing to sustain the motion and enter an order correcting the inadvertence and mistake, and to hold that said deed was in truth and in fact a guardian's deed instead of an administrator's deed. No appeal having been perfected by the widow and adult heirs of Bucktrot, deceased, the judgment of the court below in favor of the defendants as against the adult plaintiffs became final and binding. The question for the consideration of this court is whether the judgment of the court below in favor of the minors was contrary to law and the pleadings presented to the court as disclosed by the record; and did the court below commit error in refusing to grant a new trial to the defendants?

This case presents many unusual features. We find that J. A. Fulp was not only the

administrator of the estate of Bucktrot, deceased, but was also guardian for his minor children. It is claimed that as guardian he presented a petition to the county court for an order to sell, not merely the interest in the estate of the said deceased, but the entire estate, as guardian for his minor wards. As guardian he had no authority to sell the whole estate. No deed which he could have executed as guardian, notwithstanding the same might have been approved by the county court, could have conveyed the interest of the adult heirs. He claims that the land was sold to Wm. F. Collins, who was the highest and best bidder, for the sum of $800. What became of the $800? The minor heirs were not entitled in any event to more than five-eighths of the $800. The second amended answer is silent as to the disposition of the proceeds of the sale, though we see from the briefs of defendants and the original answer that the proceeds were divided among the several heirs according to their respective interests. We have the deed before us and fail to appreciate how it was possible for the mistake to be made in the execution of the deed as alleged in the answer. The deed bears date of September 26, 1908, and is by and between Jos. A. Fulp, the duly appointed, qualified, and acting administrator of Bucktrot, deceased, party of the first part, and Wm. F. Collins, party of the second part, and states as follows:

"That whereas on the 11th day of July, A. D. 1908, the county court within and for the county of Creek, state of Oklahoma, made an order of sale authorizing the said party of the first part to sell certain real estate of the said Bucktrot, deceased. * * *"

And further contained the following:

"Now, therefore, the said Joseph A. Fulp, as the administrator of the estate of said Bucktrot, deceased, as aforesaid, the party of the first part, pursuant to the order last aforesaid of the said county court, and for and in consideration of the said sum of $800, * * * the receipt whereof is hereby acknowledged, has granted, bargained, sold and conveyed, and by these presents, does grant, bargain, sell and convey unto the said party of the second part, his heirs and assigns forever, all the right, title, interest and estate of the said Bucktrot, deceased, at the time of his death, and also all the right, title and interest that the said estate by operation of law or otherwise may have acquired other than, or in addition to that of said decedent at the time of his death. * * *

"In witness whereof the said party of the first part, as such administrator, as aforesaid, has hereunto set his hand the day and year above written. Joseph A. Fulp, Administrator."

This deed was acknowledged in the following form:

"State of Oklahoma, Creek county, ss.

"Be it remembered that on this, the 4th day of February, 1909, before me, Frank L. Mars, a notary public in and for said county and state, personally appeared Joseph A. Fulp, administrator of the estate of Bucktrot, deceased, to me known to be the identical person who executed the within and foregoing instrument, and acknowledged to me that he had executed the same in the capacity therein stated, as his free and voluntary act and deed, for the uses and purposes therein set forth."

We hardly conceive how this could have been considered a mistake at that time. The purchaser accepted the deed made by the administrator; the party who executed the deed was the administrator, and, as we have seen, sold the entire estate, appeared before a notary public, and solemnly stated that he had executed the deed in the capacity therein stated. The deed was recorded and has been in the possession of the defendants, we presume, from that time until this action was instituted. During all this time they had full opportunity to examine the deed, and if a mistake so serious as this occurred, it does seem at least that the defendants would have used some effort to have it corrected by the court ordering the deed to be executed, provided they were laboring under the impression that the intention at the time of the sale was to have the deed executed by Fulp as guardian of the minor heirs, instead of as administrator. Another fact that should be kept in mind is that Fulp, the administrator and guardian in the Bucktrot case, is also the son-in-law and administrator of Collins, and must have known the capacity in which he acted. It is a cardinal rule that equity will not tolerate negligence or encourage carelessness. In Brooks v. Hamilton, 15 Minn. 26, it was held that a grantee who had not exercised diligence in ascertaining the correctness of a description in a deed to the property on which he resided at the time of the purchase, could not have the same canceled and set aside in equity; no fraud, or facts from which fraud could be inferred, being alleged in the bill. To the same effect, see Robinson v. Glass, 94 Ind. 211; Berry v. Planters Bank, 3 Tenn. Ch. 69; Ferrell v. Ferrell (W. Va.) 44 S. E. 187; Hawkins v. Hawkins, 50 Cal. 558; Kimmell v. Skelly, 130 Cal. 555, 62 Pac. 1067; Kennerty v. Etiwan Phosphate Co., 21 S. C. 226, 43 Am. Rep. 607; Marshall & Sharp v. Westrope, 98 Iowa, 324, 67 N. W. 257.

It is stated in plaintiffs' petition that Bucktrot was a full-blood Creek Indian. The second amended answer filed by the defendants denied each and every allegation contained in the petition, except such as were

specifically admitted. There is no specific admission in the second amended answer that Bucktrot was a full-blood Indian of the Creek Tribe. This fact, however, might be inferred from that part of the second amended answer in which the defendants state that deeds from the adult heirs of Bucktrot to the defendants had been approved by the county court having jurisdiction of the estate of Bucktrot, deceased. The law provided that the deeds of the adult full blood heirs should be approved by the county court having jurisdiction of the estate of the deceased allottee. The question, however, as to whether or not Bucktrot was a full-blood was not a controverted issue in the trial court; and as a further evidence that this question was never intended to be controverted, the defendants in the original brief in this court made this admission:

"This suit was commenced in the district court at Sapulpa, Creek county, Okla., by Lucy Squires, Nannie Fulsom, Madie Davis, also known as Wydie Davis, and George McDaniel, as next friend and guardian ad litem for Wayena Bucktrot, Conzey Bucktrot, Angee Bucktrot and Saggie Bucktrot, minors, against J. A. Fulp, as administrator of the estate of Wm. F. Collins, Beulah B. Fulp, Cecil C. Collins, and Arthusa Collins, being Case No. 3331 in said court; all of the plaintiffs in the court below named, except Madie Wydie Davis, nee Bucktrot, were children and heirs of Bucktrot, a full-blood deceased Creek citizen, Madie Wydie being the widow of said Bucktrot."

Independent of this admission in the brief, we are of the opinion that the trial court, having before it all the pleadings in the case at the time judgment was therein rendered, could easily find from the pleadings that Bucktrot was a full-blood. This admission was also contained in the original answer filed by the defendants, and we find the original answer is contained in the case-made and indirectly referred to in the amended answer. If Bucktrot was a full-blood Indian and the land in controversy his allotment, the administrator's deed would convey no title to the defendants. But defendants do not rely on this deed as an administrator's deed. Their answer is that this deed is, in fact, a guardian's deed, and that the sale in pursuance of which it was executed, was a guardian's sale. They do not rely for their title to the land upon the deed of J. A. Fulp as the administrator of Bucktrot, but upon a deed of J. A. Fulp as the guardian of the minors heirs. This is the theory of their defense as set forth in their second amended answer. It is immaterial, therefore, whether Bucktrot was a full-blood Creek Indian, or whether he was of Indian blood at all. They are asking that what appears to be an administrator's deed be reformed so that the same would show that it was intended to be a guardian's deed; therefore, we are unable to see where this question was material, or wherein the court committed error in rendering judgment upon the pleadings merely because the petition contains the allegation that Bucktrot was a full-blood Indian and the amended answer contained a general denial of the allegations not specifically admitted. The defendants ask for no other relief than for the reformation of the order confirming the sale of the land and the deed made in pursuance thereof. In this case, the defendants do not plead that any fraud was practiced, or that plaintiffs were guilty of any inequitable conduct. The sole ground relied upon for the reformation is that of mistake, but as to the party guilty of the mistake, the record is silent. In the deed executed by J. A. Fulp, he is designated as administrator of the estate of Bucktrot, deceased. It is pleaded by the defendants that the order of the county court of Creek county, confirming the sale and directing the deed to be executed, designated the said Fulp as such administrator, and as such and in such capacity the court ordered Fulp to convey the land by deed. The trial court was without authority to decree the correction of the deed without at the same time decreeing the reformation of the order or judgment of the county court confirming the sale. The rule seems to be well settled that the imperfect execution of a statutory power will not be aided in equity. In support of this proposition, we find in the case of Bright v. Boyd, 1 Story, 472-487, it is said:

"It is a well-settled doctrine that although equity will relieve against the defective execution of a power created by a party, yet they cannot relieve against the defective execution of a power created by law, or dispense with any of the formalities required thereby for its due execution, for otherwise the whole policy of the legislative enactments might be overturned."

The same principle is expressed in Ware v. Johnson, 55 Mo. 500. There the court said:

"A sheriff in a sale of land on execution acts in the exercise of powers conferred upon him by statute. His authority to make a deed is derived from the statute, and no court except the court under whose process he acts, can supervise his proceedings. * * * It is a well-settled principle, which needs no illustration or citation of authorities, that a court of equity cannot aid the imperfect execution of a statutory power."

In Williams v. Cudd, 26 S. C. 213, 4 Am.

St. Rep. 714, we find this principle illustrated in the following language:

"But it is strongly pressed upon us that, this being a case for partition, the extraordinary jurisdiction of equity may be invoked to consider that done which was intended to be done, and to reform the instrument by adding the word 'inheritance', so as to conform to the requirements of the law. We regret to say that we know of no authority to do so either in law or equity. If this were one of those cases in which the court may interpret executory contracts so as to effectuate the intention, there might be much force in some of the views presented in behalf of the appellant. But clearly this is not one of the cases in which the intention of the parties is a controlling consideration. The question is not what was intended to be done, but, sharply, what was actually done.

"It is true, according to the authorities, that there are cases in which the court of equity will aid the defective execution of a power, provided the parties really intended to execute it, and only failed in a matter of form, and provided also that the power was created by a will, family settlement, or other similar instrument. But, as we understand it, the court of equity will not undertake to do so in respect to powers created by statute. The doctrine is confined to powers created by voluntary act of parties in wills, deeds, and settlements; it does not extend to those created and regulated by statute. The defective execution of statutory powers in the failure to comply with the prescribed requisites cannot be aided in equity.' 2 Pomeroy's Eq. Jur., sec. 287, and numerous authorities in note. 'And indeed, it may be stated as generally, although not universally true, that the remedial power of courts of equity does not extend to the supplying of any circumstance for the want of which the Legislature has declared the instrument void; for otherwise equity would, in effect, defeat the very policy of the legislative enactments.' 2 Story's Eq. Jur., sec. 177, and note."

To the same effect, see Dunnivan v. Hughes (Ark.) 111 S. W. 271; Rogers v. Abbott, 37 Ind. 138; Cutter v. Kline, 35 N. J. Eq. 534; Fisher v. Vilamil et al., 62 Fla. 472.

It is further contended by the defendants that the minor plaintiffs are barred by the statute of limitations, and they call our attention to sections 6406 and 6583, Rev. Laws 1910, which are as follows:.

Sec. 6406. "No action for the recovery of any estate sold by any executor or administrator under the provisions of this article can be maintained by any heir or other person claiming under decedent, unless it be commenced within three years next after the sale. An action to set aside the sale may be instituted and maintained at any time within three years from the discovery of the fraud or other ground upon which the action is based."

Sec. 6583. "No action for the recovery of any estate sold by a guardian can be maintained by the ward, or by any person claiming under him, unless it is commenced within three years next after the termination of the guardianship, or when a legal disability to sue exists by reason of minority or otherwise, at the time that the cause of action accrues, within three years next after the removal thereof."

These sections must be construed in connection with section 6407, the second paragraph of section 4655, and section 4656, Rev. Laws 1910, which are as follows:

Sec. 6407. "The preceding section shall not apply to minors or others under any legal disability to sue at the time when the right of action first accrues, but all such persons may commence an action at any time within three years after the removal of the disability."

Sec. 4655. "Second. An action for the recovery of real property sold by executors, administrators or guardians, upon an order or judgment of a court directing such sale, brought by the heirs or devisees of the deceased person, or the ward or his guardian, or any person claiming under any or either of them, by the title acquired after the date of the judgment or order, within five years after the date of the recording of the deed made in pursuance of the sale."

Sec. 4656. "Any person entitled to bring an action for the recovery of real property, who may be under any legal disability when the cause of action accrues, may bring his action within two years after the disability is removed."

This action was filed in the lower court December 12, 1913. The deed sought to be reformed was recorded September 26, 1908; the order of confirmation was made and recorded September 26, 1908. At the trial, the minor heirs had not reached their majority. Under the various sections of the statute above quoted, we are clearly of the opinion that the statute of limitation would not begin to run against them until they had reached majority. See Dodson v. Middleton et al., 38 Okla. 763, 135 Pac. 369.

It seems to be the theory of counsel for the defendants, at least, we gather as much from their first brief, that J. A. Fulp was designated both as administrator and guardian throughout the proceeding leading up to the sale of the real estate; that is, as guardian, he was joining in the sale with the administrator and in the order confirming the sale he was designated as administrator alone. If he was acting in the dual capacity of ad-

ministrator and guardian, and if the entire estate was sold, which seems to have been the case, the proceeds being divided among the heirs entitled to distributive shares, how can we treat the designation as administrator as surplusage, and hold the proceedings should be corrected so as to make it appear that J. A. Fulp was not acting as administrator in the sale, but was only acting as guardian? At the time of the sale, he must have understood himself to be acting as administrator, for, as we have heretofore stated, the order of confirmation designated him in that capacity, the deed was executed by him in that capacity, he acknowledged it in that capacity, the proceeds were divided among the heirs, and the deed was recorded. It is too late now to ask that the order confirming the sale and the deed be reformed to show that he was acting at the time as guardian alone. Even as administrator, J. A. Fulp was without power under any order issued by the county court to sell the allotment of Bucktrot, who was a full-blood Creek Indian. His allotment could not be assets in the hands of the administrator, and was not the subject of sale by such administrator. Eastern Oil Co. v. Harjo, 57 Okla. 676, 157 Pac. 921; In re Davis Estate, 32 Okla. 209, 122 Pac. 547; Western Inv. Co. v. Kistler, 22 Okla. 222, 97 Pac. 588.

The contention of the defendants seems to be that if Fulp also acted as guardian, and, as guardian, joined in the sale with the administrator, he thereby conveyed to the purchaser a good title to the interest of the minors. It is sufficient answer to this contention to say that the court never confirmed the sale of the minors' interest. To have the same individual conducting a sale proceeding through court in the dual capacity as guardian of the minor heirs of a deceased full-blood Indian, and also as administrator of the estate of such deceased person, is an anomaly in probate procedure. As the administrator could not make a sale of this land, the fact that he did attempt to do so and was so designated in the order confirming the sale, even though his intention might have been to act in his capacity as guardian of the minor heirs, would necessarily enshroud the regularity of the sale proceedings in such grave doubt, and render the title to be acquired by the purchaser at such sale so questionable, as to have a tendency to deter prospective purchasers.

From the entire record, including the briefs filed herein, the original answer as found in the record, together with the amended answer, we are of the opinion that the entire proceeding was absolutely void, and of no effect, and that the purchaser at this hybrid sale secured no title to the interest of either the adult or the minor heirs. The trial court, therefore, committed no error in canceling the deed. The judgment of the lower court is in all things affirmed.

RAINEY, V. C. J., and KANE, JOHNSON, and McNEILL, JJ., concur.