**SMITH v. WILLIAMS et al.**

No. 10467—Opinion Filed May 25, 1920.

(Syllabus by the Court.)

**1. Indians—Restrictions on Lands—Exclusive Powers of Congress.**

When the question of restriction on the alienation of lands allotted to the Five Civilized Tribes or the right or power of alienation is involved, resort must be had to the acts of Congress relating to these matters, and to the acts of Congress alone.

**2. Same — Alienation of Land — Equitable Rights.**

The right on the part of an allottee of the Five Civilized Tribes to alienate his land and the right on the part of any person to purchase such land and acquire title thereto, is peculiarly and strictly a statutory right, created by acts of Congress, which is not possibly available except through the means which Congress has prescribed, and title cannot be acquired from such allottee upon equitable grounds.

**3. Same—Quantum of Indian Blood—Evidence—Records.**

On the question of quantum of Indian blood of an allottee, and the question as to whether his allotments were under restrictions, the enrollment records are competent as tending to show the quantum of blood, and the records of patents to their allotments

are competent as tending to show whether such allotments are under restrictions.

**4. Deeds — Action to Reform—Defense—Cancellation.**

In an action to reform a deed, the parties defendant are not precluded from filing a cross-bill, alleging the invalidity of the deed and asking that it be canceled.

**5. Same—Right to Jury Trial.**

In an action for reformation of a deed, and upon a cross-bill by defendants for cancellation of same, where the relief sought by both parties is purely equitable in character and depends solely upon the exercise of the equity powers of the court, it is not error to refuse a demand for a jury.

Error from District Court. Pittsburg County; R. W. Higgins, Judge.

Action by J. M. Smith against John Williams and others, heirs of Joshua McCurtain, deceased. Judgment for defendants, and plaintiff brings error. Affirmed.

Counts Bros. and S. A. Horton, for plaintiff in error.

W. J. Hulsey, for defendants in error.

HARRISON, J. This action involves the validity of a deed to restricted Choctaw lands. J. M. Smith brought the action against the heirs of Joshua McCurtain, a half-blood Choctaw, to reform a deed made to Smith by Joshua McCurtain, which deed was sought to be reformed on the ground of mutual mistake in description of the land. McCurtain's allotment comprised the east ½ and lot 2 of the N. W. ¼ of section 30, Twp. 4 N., R. 16 east. He attempted to convey to Smith 40 acres of this allotment, the said 40 acres being the N. E. ¼ of the N. W. ¼ of said section; but, instead of describing said 40 acres, the deed described lot 2, which would be the S. W. ¼ of the quarter section. Smith alleged that he was buying the N. E. ¼ of said quarter section instead of the S. W. ¼ of same, and that he paid $527 and a span of mules and wagon for the land, and, having no knowledge of the misdescription in the deed, went upon the land which he thought he had bought, and improved it, clearing off the timber, putting the land in cultivation, and placing a house and other valuable improvements thereon. He claims that upon the discovery of the mistake in the deed he asked McCurtain to correct same, and McCurtain promised to do so. McCurtain was taken sick and Smith went to see him to have the deed corrected, but McCurtain was in too bad a condition to do so and died without doing so. Therefore, this suit was begun to reform the deed so as to make it describe the land which McCurtain intended to sell

and which Smith supposed he was buying and paying for, instead of the land described in the deed.

John Williams, a son-in-law of Joshua McCurtain, and administrator of his estate, filed answer and cross-petition, alleging, in substance, that the deed which Smith sought to have reformed was void because the land described therein was the homestead allotment selected by deceased, and was therefore void as to the land described, and was also void as to the land intended to be described, for the reason that restrictions had not been removed from said land at the time the deed was executed, wherefore he prayed for cancellation of said deed as a cloud upon title.

The trial court rendered judgment in favor of defendants and decreed the cancellation of Smith's deed. In rendering judgment, however, the trial court said:

"In other words, it is this, Mr. Smith took a deed to a portion of his homestead and claims that it was a mistake, that it ought to have been to another portion of the homestead. Now, gentlemen, as far as mistake is concerned, I am under the impression from the evidence there was a mistake. That is this, I understand he deeded him one tract of land there when he intended to deed another and the evidence bearing that out more strongly than anything else is that Mr. Smith went onto that which he had bought and commenced clearing it up and improving it and getting the fruits of it and there seeming to have been no objection from Mr. McCurtain, that would look like that there was really a mistake and if that was the only matter that confronted the court the court wouldn't have much trouble in deciding this lawsuit, but, here is what is confronting the court: Apparently he seeks to buy the homestead of an Indian where restrictions were placed upon it. It is the law that an Indian cannot sell his restricted land, a deed is absolutely void, of no force and effect, and Mr. McCurtain was selling to Mr. Smith homestead land upon which there were restrictions. I declare I wish, Mr. Smith, I could see some way to help you out of that, but I do not see any way right now. I hate to see a man lose his money, for Mr. Smith is a man that money comes by hard licks, but I do not know of any way of making a deed stand up from an Indian where it is restricted land. I will necessarily have to quiet title in favor of these defendants and order that they be given possession."

In the journal entry of judgment certain findings of fact and conclusions of law were made, the substance of all of which is that both the land described in the deed and the land which, under the agreement of the parties should have been described were under restrictions which had never been removed, and that therefore the deed was void and was ordered canceled as a cloud upon defendants' title.

The plaintiff, Smith, brings the case here and urges:

1st. That Smith, having performed every obligation required on his part and having in evidence of good faith gone upon the land and erected a house and other valuable improvements, cleared the timber off the land, and put same in cultivation, was entitled to specific performance of the contract between him and Joshua McCurtain.

2nd. That the court erred in receiving and considering as evidence a certificate showing the roll number, age, and degree of blood of Joshua McCurtain, the allottee, and likewise erred in receiving the certificate of Gabe E. Parker, superintendent and custodian of the Choctaw Indian records, showing the land comprised in McCurtain's allotment.

3rd. Erred in overruling plaintiff's demurrer to defendants' cross-bill.

4th. Erred in refusing plaintiff's demand for a jury.

The substance of plaintiff in error's contention under his first proposition is that the land which Smith thought he was buying was his surplus allotment, and that by mutual mistake it was not described in the deed; that in good faith he had gone upon the land, erected valuable improvements, and put the land in cultivation, and had been continuously in possession of the land from the date of the deed to the time of this suit; that the heirs of McCurtain knew that Smith was in possession of the land under what he thought to be a deed to same, and that they acquiesced in same and are estopped from denying the validity of the deed and should be held to a specific performance of the contract between McCurtain and Smith. This contention might be well taken but for the fact that the land in question was Indian land and under the exclusive supervision of Congress. Congress had in very plain language expressly provided how valid title to Indian lands might be acquired, and, in order to prevent any and every attempt to convey title to such lands without full compliance with the method prescribed, it placed positive restrictions against the alienation of such land and expressly declared that every contract to convey and every deed of conveyance before the removal of such restrictions should be absolutely void. Now, this was the decisive feature which controlled the trial court, and is likewise the decisive question which con-

fronts. this court. If the land was under restrictions at the time the deed was obtained from McCurtain, then the deed to same is void, not because of the misdescription of the land, but because the contract to convey restricted land was itself void, McCurtain having no power to make a valid agreement to convey, because Congress had said that any such agreement before the removal of restrictions should be void. Hence the deed sought to be reformed was void, not because of the fact that through mistake it described the homestead allotment of McCurtain, but because the land intended to be conveyed was itself under restrictions which had not been removed, and therefore both the agreement to convey and the instrument of conveyance were void.

From the beginning, it has been the settled policy of this court, and also of the federal courts, in determining the validity of deeds to restricted Indian lands, to look to the acts of Congress alone.

In Wilson v. Greer, 50 Okla. 387, 151 Pac. 629, it is said:

"When the question of restriction on the alienation of lands allotted to members of the Five Civilized Tribes, or the right or power of alienation, is involved, resort must be had to the acts of Congress relating to these matters, and to the acts of Congress alone."

This policy is reflected in all the adjudicated cases from this court and from the federal courts. Landrum v. Graham, 22 Okla. 458, 98 Pac.. 432; Allen v. Oliver, 31 Okla. 356, 121 Pac. 226; In re Washington's Estate, 36 Okla. 559, 128 Pac. 1079; United States v. Allen, 171 Fed. 13; Truscott v. Closser, 198 Fed. 835; The 30,000 Land Suits, 199 Fed. 811; Heckman v. United States, 224 U. S. 413, 57 L. Ed. 820; Tiger v. Western Inv. Co., 221 U. S. 286, 55 L. Ed. 738; Bledsoe v. Wortman, 35 Okla. 261, 129 Pac. 841; Oates v. Freeman, 57 Okla. 449, 157 Pac. 74.

This policy has been pursued by the courts, not because the courts have overlooked the fact that hardships which seemed inequitable have resulted in some instances, but because Congress has definitely and specifically prescribed the manner of acquiring title to the lands of the Five Civilized Tribes, and has expressly declared that title acquired in any other manner is absolutely null and void.

Before the acts of Congress allowing title to be acquired to such lands and prescribing the means of acquiring same, there was no means by which title to such lands could be acquired by any person, and no one attempted to do so. Hence when the various acts of Congress upon this question became the law, under which rights were extended to the Indian to convey under express conditions and extended to other persons to purchase under express conditions, new rights were thereby enacted into existence which had not existed theretofore. Prior to such enactments, the Indian had no right to sell, he had no title in himself, and no one had a right to purchase. Such rights were created and given by Congress. They came from no other source, and are not to be determined by any other light, hence it is to the acts of Congress alone that we look for light on the question of the validity of a given deed to restricted Indian land.

The principles of equity, though not overturned or disregarded, are not controlling in such cases, for the reason that they are not applicable. The right on the part of an Indian to alienate his land, and the right on the part of any person to purchase such land and to acquire valid title thereto, is peculiarly and strictly a statutory right created by acts of Congress, which right is not possibly available except through the means which Congress has prescribed, for Congress has expressly said that any attempt to acquire such rights, except through the means prescribed by Congress, shall be absolutely null and void. Therefore title to restricted Indian land cannot be acquired from the allottee upon equitable grounds. The methods prescribed by Congress are exclusive.

Counsel for plaintiff in error cites the case of Brusha v. Board of Education, 41 Okla. 595, 139 Pac. 298, and a number of other cases announcing the same principles, and insists that the principles therein announced are applicable to the conditions created in the case at bar. This contention we readily concede might be true, but for the fact that this is Indian land and that Congress in effect has said that the principles of equity and common law do not come into this class of cases until the statutes are first complied with; that the principles of equity and common law are not applicable in determining the rights of parties until such rights are first acquired by compliance with the acts of Congress. M., K. & T. R. Co. v. Kan. Pac. R. Co. (U. S.) 24 L. Ed. 1097; Stevens v. Smith (U. S.) 19 L. Ed. 933; McDowell v. United States (U. S.) 40 L. Ed. 271; United States v. Babcock, 250 U. S. 328, decided June 2, 1919.

We fully agree with the trial court that to enforce the law in this case will work a hardship upon J. M. Smith, one which, like the trial court, we may regret to see him bear. But, again, as was said by the trial court, "there is no way around it." The

law was in force at the time this deed was acquired, by following which law a valid title could have been acquired, but his failure to follow the law has resulted in no title to the land, and though the resulting hardships may be onerous, they cannot suffice to set aside the law.

As to the admission in evidence of the records complained of by plaintiff in error, one of such records tended only to show that McCurtain was a half-blood Choctaw, while the other tended only to show that the entire allotment of McCurtain was under restriction. Both of these facts were practically admitted, at least neither was seriously denied, and from what appears from the record neither could have been successfully denied; hence their admission did not constitute reversible error.

As to his third proposition, the overruling of plaintiff's demurrer to defendants' cross-bill, we think there was no error committed; the cross-bill neither in substance nor fact amounted to any more than to allege that plaintiff's deed was void, because it attempted to convey restricted land, and to ask that such deed be canceled if such allegation be proved. We know of no rule, nor has any been cited, that would preclude defendants from denying the validity of plaintiff's deed, or from asking that it be canceled if found to be void.

As to the fourth proposition, there was no question of fact for the jury to find; it was a case purely equitable in character, the plaintiff asking for reformation of deed, and defendants asking for cancelation of same, both of which depended solely upon the court's construction of the law, and upon the exercise of his equity powers. The refusal of demand for jury was not error.

The judgment is affirmed.

RAINEY, C. J., and JOHNSON, McNEILL, BAILEY, and RAMSEY, JJ., concur; HIGGINS, J., not participating.