ZELMA OIL CO. et al. v. NEMO OIL CO. et al.

No. 11936—Opinion Filed Oct. 25, 1921.

Rehearing Denied Jan. 10, 1922.

(Syllabus.)

**Oil and Gas—Production Under Invalid Assignment of Lease—Action by Lessee for Accounting—Measure of Damages.**

Where a corporation in good faith enters into peaceable possession of land under a valid oil and gas lease, which has been assigned to it, and under a claim of right produces oil and gas therefrom, and thereafter such assignment is declared invalid and canceled by decree of the court, the measure of damages to the original lessee in an action for an

accounting for the oil and gas produced from said premises by the assignee of said lease is the value of the lessee's share of such oil and gas at the surface or in tanks or pipe line, wherever the same may be, less the reasonable cost of producing the same.

Error from District Court, Tulsa County; Redmond S. Cole, Judge.

Action by the Zelma Oil Company and others, against the Nemo Oil Company and others against the Nemo Oil Company and tion. Judgment for plaintiffs, from which they appeal, and cross-appeal by the Sinclair Oil & Gas Company from the judgment against it. Affirmed.

Rainey & Flynn, Twyford & Smith, Thomas H. Owen, and Robert Burns, for plaintiffs in error.

Poe & Lundy, for defendant in error Nemo Oil Company.

Robinson & Mieher, for defendant in error Producers State Bank.

Edw. H. Chandler, Summers Hardy, and Wm. O. Beall, for defendant in error Sinclair Oil & Gas Company.

T. J. Flannelly and West, Sherman, Davidson & Moore, for defendant in error Prairie Oil & Gas Company.

NICHOLSON, J. This is the second appeal of this case; the opinion in the first appeal having been handed down June 17, 1919 (Bentley v. Zelma Oil Co., 76 Okla. 116, 184 Pac. 131.)

This action was originally commenced in the district court of Tulsa county, by the minority stockholders of the Zelma Oil Company, on October 24, 1916, seeking a cancellation of assignments of certain oil and gas leases, and for an accounting and receivership. The petition alleges that the assignments of said leases, purported to have been heretofore made by certain officers of the Zelma Oil Company to the Nemo Oil Company, were void for failure to comply with the statute governing such matters, and were voidable by reason of actual and constructive fraud of the officers of the Zelma Oil Company and Nemo Oil Company. The trial court found against the plaintiffs, and they appealed to this court, where the judgment of the trial court was reversed, and the cause remanded, and the trial court was instructed to order a proper accounting by the Nemo Oil Company of the profits derived from the leases and the money expended thereon, and to render judgment in accordance with the conclusions expressed in said opinion. Thereupon the Zelma Oil Company became a formal plaintiff and filed its amended

and supplemental petition for an accounting against the Nemo Oil Company, Prairie Oil & Gas Company, Producers State Bank of Tulsa, Sinclair Oil & Gas Company, Prairie Pipe Line Company, and Bixby Gasoline Company.

It appears that all of the oil and gas produced under the leases involved was first received by the Nemo Oil Company. Up to July 15, 1916, the oil was sold to the Prairie Oil & Gas Company, and checks therefor issued to the Zelma Oil Company, but the proceeds of these checks were received by the Nemo Oil Company. On July 1, 1916, the officers of the Zelma Oil Company purported to execute a transfer order, reciting that the company sold all the oil to the Nemo Oil Company. This order was held invalid by the former opinion of this court. On July 19, 1916, the Nemo Oil Company executed a transfer order to the Producers State Bank, by which the Nemo Oil Company transferred to the bank all its interests in the wells and oil on said leases, and thereafter the payments for oil produced were made to said bank. Under this order, the Prairie Oil & Gas Company received the oil until March 16, 1917, and paid for the same to the Producers State Bank, which in turn either paid the same to the Nemo Oil Company or credited the proceeds on debts owing it from the Nemo Oil Company. From the 16th day of March, 1917, to the 1st day of March, 1919, the oil produced was sold to the Sinclair Oil & Gas Company, which company paid for the same to the Producers State Bank, and the bank accounted to the Nemo Oil Company therefor; this being done under transfer orders from the Nemo Oil Company to the bank. During the same time certain casinghead gas was by the Nemo Oil Company sold to the Bixby Gasoline Company, but no complaint is made on this account, inasmuch as the Zelma Oil Company has obtained judgment therefor.

At the trial of the accounting action it developed that a total of 74,361.28 barrels of oil had been produced and marketed, and at the conclusion of the trial the court made findings of fact and conclusions of law, finding for the plaintiffs in the sum of $5,215.14 against the Nemo Oil Company and the Sinclair Oil & Gas Company; and in the sum of $5,223.80 against the Nemo Oil Company and the Bixby Gasoline Company. On these findings the court entered judgment, from which the plaintiffs appeal.

It is the contention of plaintiffs in error that, under the facts as found, the defendants and each of them entered upon said

property wrongfully and therefore were trespassers, and that action amounted to a conversion of the oil produced therefrom, and that said defendants are severally and jointly liable for the oil converted by them, and that inasmuch as plaintiffs prosecuted this action with diligence, they are entitled to recover the highest market price, viz: $3.50 per barrel, for oil converted between the dates the same was converted and the judgment of the trial court, and that the defendants are not entitled to credit for work performed and material furnished in producing and marketing said oil and gas.

The plaintiffs sought the cancellation of assignments of certain oil and gas leases on various grounds, chiefly on the allegation that the transfer was in consummation of a conspiracy entered into between H. B. Houghton, Dan Dansinger. and Moe ... Isaacs, officers of the Nemo Oil Company, to fraudulently deprive the Zelma Oil Company and its stockholders of valuable property and leases without any consideration, and illegally; that no consideration was paid for said assignments; that the officers of the Nemo Oil Company had both actual and constructive notice of the fraudulent, void, and illegal nature of said assignments; that said assignments were not executed in conformity with any vote of the stockholders of the Zelma Oil Company, were not in compliance with, but in violation of, the by-laws of said company, and were unauthorized, and were made with the intention of H. B. Houghton and the other officers of the Nemo Oil Company to cheat and defraud the Zelma Oil Company and its officers and stockholders, including the plaintiffs, out of said leases and property. The petition contains this further allegation:

"Plaintiffs say that by virtue of the foregoing the said pretended drilling contract and each of the said pretended lease assignments should be canceled"

—and the prayer of said petition was for the cancellation of said assignments and for the appointment of a receiver.

To this petition the plaintiffs filed an amendment reading in part as follows:

"Plaintiffs further state that defendant Nemo Oil Company has been in possession of and has been obtaining the oil from the lease ever since the Second day of July, 1916, and that plaintiffs are entitled to an accounting from said date.

"Plaintiffs further state that if on final hearing of this case and final accounting of the proceeds of oil from said lease and said wells, it appears that said Nemo Oil Company has expended money and laid out

money for and on behalf of the plaintiffs and the Zelma Oil Company, in excess of the amount it has realized from the sale of oil and gas from said premises, then plaintiffs will reimburse defendant Nemo Oil Company for any balance found due, and they hereby offer to do full and complete equity in the premises."

The 10th and 11th paragraphs of the syllabus in the case of Bentley et al. v. Zelma Oil Co., supra, are:

"10. It appearing that the officers of the Zelma Company made a fraudulent sale of a lease to the Nemo Company, and that afterwards the Nemo Company expended money in developing such lease, but it appearing that in the meantime certain amounts of profits which rightfully belonged to the Zelma Company had been received and appropriated by the Nemo Company, in such case a proper accounting should be had, and the rights of the parties determined thereby.

"11. Where the officers and directors of a corporation refuse to bring suit to cancel conveyances of corporate property, fraudulently made by such officers and directors, dissenting stockholders in such case may maintain an action for the cancellation of such conveyance."

In the body of the opinion, the court uses the following language:

"It is contended that large amounts of money had been expended by the Nemo Oil Company in the development of the lease originally owned by the Zelma Company, and while the contention that $75,000 or $80,000 had been spent in developing such lease is not sustained by the evidence, yet it is possible that some money was actually expended by the Nemo Oil Company in developing such lease; on the other hand, it appears conclusively that a very considerable amount of oil had been sold off of said lease by the Nemo Oil Company, none of which amount was accounted for to the Zelma Company; hence, if any amount was actually expended by the Nemo Oil Company in developing said lease, such amount, less the amount of oil sold off of said lease, should be paid back to the Nemo Company by the Zelma Company. This would necessitate an accounting, which should have been granted in the first instance by the trial court."

The mandate issued to the district court is as follows:

"Whereas, the Supreme Court of the state of Oklahoma, did at the June, 1919, term hereof, on the 17th day of June, 1919, render an opinion in the above-entitled cause, appealed from the district court of Tulsa county, reversing the judgment of the trial court herein, with instructions to order a proper accounting by the Nemo Company of the profits derived from the lease involved

and the money expended thereon and to render judgment in accordance with the conclusions reached in said opinion."

Following the mandate of this court, the trial court, in taking the accounting, found that the Nemo Oil Company was bound to account to the Zelma Oil Company for the proceeds of the oil and gas sold from said leases; that the amount for which the Zelma Oil Company was entitled to an accounting was the sum of $112,458.31; and further found that the Nemo Oil Company was entitled to credit for the sum of $107,243.17, being the amount expended by it in developing the property; and rendered judgment for the Zelma Oil Company against the Nemo Oil Company for the difference of $5,215.14, and rendered judgment for a like amount against the Sinclair Oil & Gas Company.

It is not contended that the findings and judgment of the trial court in finding and decreeing the amount due are against the weight of the evidence, but it is insisted that the former opinion of this court and the undisputed evidence in this case show that the defendants were guilty of conversion, and should be treated as willful trespassers, and that the plaintiffs were entitled to recover the highest market value of the oil taken from the premises from the date of such conversion to the date of judgment, without any deduction for the expenses of producing and marketing the oil.

In Probst et al. v. Bearman, 76 Okla. 71, 183 Pac. 886, conversion is defined by this court as follows:

" 'Conversion' is any distinct act or dominion wrongfully exerted over another's personal property in denial of or inconsistent with his rights therein."

And in 26 R. C. L., page 1113, this definition is given:

"Any distinct act of dominion wrongfully exerted over property of another in denial of his right or inconsistent therewith, may be treated as a conversion, and it is not necessary that the wrongdoer apply the property to his own use."

While one who wrongfully exerts dominion over property of another, or appropriates such property to his own use, is a trespasser, and is guilty of conversion, yet in cases such as the one at bar there is a distinction as to the liability of one so appropriating such property, dependent upon whether his trespass was innocent or willful; the prevailing rule being that where one who encroaches on the land of another and produces and disposes of oil or gas therefrom

acts inadvertently or under a claim of right, with a bona fide belief of title, he is liable in damages only for the value of the oil and gas at the mouth of the well or delivered in the pipe line or tanks, and is entitled to deduct therefrom the expense of the production thereof. On the other hand where the taking is reckless, willful, or intentional, or without claim of right or title, the trespasser is liable for the enhanced value of the product when and where it is finally converted to his use, without any deduction for expenses incurred in producing it. So the question to be determined is, Should the defendants in the case at bar be treated as willful trespassers?

It must be borne in mind that the defendant Nemo Oil Company was in peaceable possession, operating under valid leases which had been assigned to it by the Zelma Oil Company, and under a claim of right; that the Nemo Oil Company had expended certain moneys in developing the property at the time the action was instituted; that the trial court held adversely to the plaintiffs, and refused the cancellation of said assignments, and that the plaintiffs appealed to this court, but did not supersede the judgment of the trial court, which judgment remained in full force until reversed. The trial court made findings of fact, a portion of which are as follows:

"The court further finds that on the 24th of October, 1916, the time when the suit was begun, the Nemo Oil Company had completed three wells on the lease in question and contracted for the drilling and had begun two more wells on said property and that by the making of said contracts for the drilling of the two wells it became liable for the contract price therefor and it had also at the time suit was begun purchased and contracted for the casing and supplies for said wells.

"The court further finds that at the time judgment was rendered in favor of the Nemo Oil Company, in the district court of Tulsa county in February, 1917, the Nemo Oil Company had completed and was drilling six wells on the property and that four of said wells were what were known as offset wells, being wells necessary for the protection of the lines of said leases, being drilled opposite wells on the adjoining leases on the east.

"The court further finds that eleven wells had been drilled on the lease in question by the Nemo Oil Company and that the drilling of all of said wells was necessary to develop the property in accordance with the terms of the original lease, and that six of the wells so drilled were offset wells and necessary to protect the lines of said leases and prevent the oil and gas from being drained

from said leases through wells on adjoining leases.

"The court further finds that it was necessary, in order that the terms of the original leases be carried out, that the property be developed and that the lease be kept in proper condition and that in order to do this, it was necessary to equip said lease by the purchase and placing thereon of different kinds of machinery, tools, piping, tubing and supplies. and that said equipment was purchased by the Nemo Oil Company and placed thereon.

"The court further finds that the Nemo Oil Company expended in the development, equipment, maintenance and operation of the lease in question the sum of $105,138.57, and that all of the equipment, supplies, tools, lumber and other materials purchased with any of said amount and placed on said lease still remain thereon, and were taken possession of together with the said leases by the Zelma Oil Company in October, 1919, and that the said Zelma Oil Company is still in possession of said lease, supplies, tools, equipment, lumber and machinery so placed thereon.

"The court further finds that the Nemo Oil Company placed certain equipment on said leases and afterwards sold the same, but that the amounts paid for said equipment are not included in the sum of $105,138.57. That in addition to the sum of $105,138.57, the Nemo Oil Company expended for the purchase of said leases the sum of $11,100.00; that the Zelma Oil Company did not receive the benefit of said sum or any portion thereof, except a sum representing the difference between the amount paid the American National Bank, $8,100.00, and the Producers State Bank, $6,500.00, to wit: $1,600.00.

"The court further finds that the Nemo Oil Company economically and properly operated and developed said leases, and the prices paid for the development, equipment, maintenance and operation and all labor, drilling, casing, supplies, machinery and operating expenses were fair and reasonable and were necessary for the proper development and operation of said leases."

From these findings of fact, it appears that it was necessary for the preservation of the interests of the parties that the property be developed. If the Nemo Oil Company had not proceeded with the work, the Zelma Oil Company would have been compelled to do so, or the property would have been destroyed or damaged or the leases forfeited for failure to drill offset wells; and of course the Zelma Oil Company would have expended money in this operation, and as the Nemo Oil Company "economically and properly operated and developed said leases, and the prices paid for development, equipment,

maintenance, and operation and all labor, drilling, casing, supplies, machinery, and operating expenses were fair and reasonable and were necessary for the proper development and operation of the leases," we are unable to see that plaintiffs are injured by said judgment; and under the facts, it would, in our opinion, be inequitable to penalize the defendant for doing that which the court found was necessary to be done in order to preserve the subject of the litigation and prevent its loss to the plaintiffs. We adhere to the rule announced by this court in Barnes v. Winona Oil Co., 83 Okla. 253, 200 Pac. 985, the syllabus of which is as follows:

"Where a person in good faith entered into peaceable possession of land upon which he owns an oil and gas lease and produces oil and gas therefrom, and thereafter said lease is declared void or invalid, the measure of damages to the landlord in an action for an accounting for the oil and gas produced from said premises by the lessee is the value of the oil at the surface or in pipe line or tanks wherever the same may be, less the reasonable cost of producing the same"

—and agree with the reasoning of that case wherein it is said:

"In our judgment, what would amount to a willful taking of property applicable to persons in possession of land producing mineral ores therefrom or cutting timber on the land, is not applicable to a person in possession of land producing oil or gas therefrom. The reason for the rule is very apparent. If a person in possession under a mining lease is producing mineral ore therefrom and has notice that the landlord considered the lease invalid, or that a third party claims a superior lease upon the land. the party might cease mining the ore, or from cutting the timber, until the title to the ore or timber is determined, without irreparable injury either to the landlord or the lessee, but in case of a person in possession of land producing oil and gas therefrom a different condition exists. If the party in possession shuts in the wells, the oil and gas is liable to be drained by adjacent landowners, or he has the risk of salt water ruining the wells, and in many other ways the wells may be ruined by failure to operate or to produce the oil or gas therefrom thereby causing irreparable damage to the property. It is essential to produce the oil and gas to protect the interest of all the parties, and to hold that the further operation of said lease by the person in possession would amount to a willful taking and appropriation of the property of another would be placing too narrow a construction on the word 'willful.'

"To permit the owner of the land, or another lessee, to recover from the person who is in peaceable possession of the land and

producing oil or gas therefrom, the value of the oil at the surface without deducting therefrom the cost of producing would be analogous to permitting the recovery of exemplary damages. * * *

"To hold that the taking of the oil is willful, by a person who has obtained possession in an ordinary manner without creating a breach of peace, and in peaceable possession of the land, operating under a lease which has not been declared invalid or void, and doing only what he is entitled to do under his contract, we think would be contrary to the intention and spirit of the law that the damages should be compensatory only."

It was evident that this was the view taken by the plaintiffs at all times until after a reversal of the judgment, for in the amendment to their petition they state in substance that the Nemo Oil Company has been in possession and obtaining oil from the leases since the 2nd day of July, 1916, and that the plaintiffs are entitled to an accounting; that it appears that the Nemo Oil Company has expended money on the development of said leases and wells and has expended money for and on behalf of the plaintiffs and the Zelma Oil Company in excess of the amount it has derived from the sale of said oil and gas from the premises, then the plaintiffs will reimburse defendant Nemo Oil Company for any balance found due, and they offer to do full and complete equity. And in the original brief submitting the case to this court they say:

"In conclusion, the plaintiffs in error pray that the findings and judgment of the lower court be reversed, and that judgment be here rendered in favor of the plaintiffs in error, canceling the instruments described in the pleadings. We also ask that the case be remanded for an accounting. If defendants have received more income from the property than the reasonable value of the improvements they have placed on it, plaintiffs are entitled to judgment for the difference. On the other hand, if the value of the improvements exceeds the income derived by defendants from the property, the plaintiffs offer to do equity and reimburse the defendants for such difference, if any."

The statements contained in their petition and brief and their prayer for relief are inconsistent with their present demand for the highest market price for the oil and gas sold without any deduction for expenditures, and as this court granted them the relief sought, they cannot now be heard to complain.

The plaintiffs in error contend that the opinion of this court as to the proper method of accounting is obiter dictum and not binding upon the trial court. But it is unnecessary to determine this question, for the

reason that it is immaterial whether the expression of this court be treated as the law of the case or as obiter dictum, or whether it be considered as merely a suggestion to the trial court, as a proper method of accounting, because, under the conclusions herein reached, the method suggested by this court and adopted by the trial court was proper and was in accordance with the prayer plaintiffs' amended petition.

The defendant in error, Sinclair Oil & Gas Company has filed a cross-petition in error complaining of the judgment rendered against it, but has failed in its brief to point out wherein the judgment of the trial court is erroneous.

We conclude that the judgment of the trial court is correct, and it is therefore affirmed.

HARRISON, C. J., and PITCHFORD, McNEILL, and ELTING, JJ., concur.