## TIDAL OIL CO. et al. v. FLANAGAN.

No. 11209—Opinion Filed March 28, 1922.

Rehearing Denied Oct. 17, 1922.

(Syllabus.)

**1. Quieting Title — Action — Who May Maintain.**

Under c. 19 Session Laws 1910-11, one not in possession of real property may bring an action for the possession thereof and to quiet title thereto by invoking the jurisdiction of the court to cancel conveyances of record which constitute a cloud upon his title.

**2. Deeds—Quitclaim Deed—Interest Conveyed.**

Under section 1161, Revised Laws 1010, a quitclaim deed conveys all of the right, title, and interest of the grantor to the grantee to the premises therein described, where such deed is executed in substantial compliance with c. 13, Revised Laws 1910.

**3. Indians—Restricted Lands—Conveyances —Validity.**

A conveyance of allotted restricted Indian lands made in violation of a federal statute authorizing the alienation of such lands is against public policy and absolutely void; and in no manner can any right, title, or interest in such lands be acquired under such a conveyance.

**4. Same—Minor Allottees—Jurisdiction of State Courts—Quieting Title.**

The district courts of this state are without jurisdiction to enter a valid judgment divesting an Indian minor allottee of title to his allotted lands by entering a decree quieting title in a party asserting title to such lands under void conveyances executed

in violation of a federal statute prescribing the manner by which title may be acquired to such lands. The title to such lands may be acquired only under a regular probate sale as provided for by law.

**5. Guardian and Ward—Oil and Gas Lease —County Courts—Jurisdiction.**

The county courts of this state have jurisdiction, where it is made to appear to be for the best interest of a minor, to authorize the guardian to sell an oil and gas lease upon its lands as provided by the applicable statutes and the probate rules of the Supreme Court; but such courts are without power or authority to enter a valid order validating a void oil and gas lease executed in violation of the law.

**6. Estoppel—Elements.**

An essential element of estoppel is that the party invoking it must have been misled to his injury by the wrongful conduct of the party against whom it is invoked.

Error from District Court, Creek County: Lucien B. Wright, Judge.

Action by J. P. Flanagan against the Tidal Oil Company et al. in ejectment and to quiet title. Judgment for plaintiff. Defendant brings error. Modified and affirmed.

West, Sherman, Davidson & Moore, Biddison & Campbell, and W. C. Franklin, for plaintiffs in error.

Edw. H. Chandler, Summers Hardy, George T. Brown, and B. B. Blakeney, for defendant in error.

KENNAMER, J. This action involves the title to 120 acres of land located in Creek county, Okla., originally allotted to Robert Marshall, enrolled as a Creek freedman opposite roll No. 5449. The action was instituted by J. P. Flanagan against the Tidal Oil Company et al., as defendants, to quiet title to the lands and for an accounting as to the amount of oil and gas extracted from the lands by the defendants. The plaintiff asserted title to the lands under a general warranty deed dated January 22, 1916, executed by Robert Marshall, the allottee, purporting to convey to him the lands in controversy, and a quitclaim deed executed October 13, 1916.

The Tidal Oil Company in its answer admitted the lands in controversy were allotted to Robert Marshall; the execution of the deeds under which the plaintiff asserted title, but denied that the plaintiff held the lands adversely to the defendant Tidal Oil Company; alleged that it, long prior to the purchase of the lands by the plaintiff, was in the actual possession thereof, with the knowledge and consent of the plaintiff, operating the lands for oil and gas under certain oil and gas mining leases set up in the answer.

E. M. Arnold, one of the defendants, disclaimed any interest in the lands.

The answer of Eleanor Arnold, in substance, was the same as the answer of the Tidal Oil Company, except she asserted that she was entitled to three-fourths of the royalties due under the leases pleaded by the defendants.

The cause was tried in the district court of Creek county in July, 1919. The trial court, at the conclusion of the introduction of the testimony of the plaintiff and the defendants, found the issues in favor of the plaintiff; decreed him to be owner of and entitled to the possession of the lands in controversy, and that the defendants have no right, title, or interest in or to the lands or any part thereof.

The court appointed a referee to take an accounting of the oil and gas extracted from the premises since October 13, 1916: ordered that the referee report his findings, conclusions, and evidence to the court in writing before the 15th day of September, 1919. Upon the report of the referee subsequently filed, the court entered judgment in favor of the plaintiff, Flanagan, for possession of the lands, quieting title in him, and for the sum of $108,140.91, against the defendant Tidal Oil Company, the value of oil, gas, and petroleum extracted from the lands since the 13th day of October, 1916, and for $10,135.20 against the defendant Eleanor Arnold, the value of 3/32 of all the oil, gas, and petroleum extracted from the premises since October 13, 1916.

This appeal is prosecuted by Tidal Oil Company and Eleanor Arnold to reverse the judgment of the trial court. Numerous assignments of error are assigned for reversal of the judgment. The essential facts necessary to be considered to a decision in this cause appear to be as follows: In July, 1909, Robert Marshall, a Creek freedman, the allottee of the lands in controversy, while a minor 14 years of age, was married. In October, 1909, the district court of Creek county entered an order conferring majority rights upon Marshall. After the marriage and the order conferring majority rights upon Marshall he executed an assignment of the oil and gas royalties upon his allotment, a deed to portions of it, and an option contract for the sale of the other portion of his land not covered by the deed which he had executed. All of these instruments, it is conceded, were executed while

Marshall was a minor. After the execution of the deed by Marshall, attempting to convey portions of his land, the grantees in the deed executed an oil and gas lease upon part of the land to the Arkansas Oil Company and an oil and gas lease to other portions of the land to the Orient Oil & Gas Company, which instruments were assigned to the Oklahoma Oil Company, now the Tidal Oil Company.

The allottee, Robert Marshall, after the execution of these various instruments, filed an action in the district court of Creek county to cancel the conveyances made by him upon his allotment. On the 16th day of May, 1910, the district court of Creek county rendered judgment against him in favor of the defendants in the action. Arnold, Hymans, and Lawson, who were the grantees in the respective conveyances executed by Marshall. A motion was filed to vacate this judgment, which was overruled in June, 1913.

Thereafter, on the 11th day of June, 1910, Robert Marshall was by the county court of Creek county declared an incompetent and a guardian appointed for him. After the appointment of a guardian for Marshall, an attempted settlement of the litigation which had been instituted by Marshall in the district court to recover his allotted lands was entered into between the guardian of Marshall and the defendants in the action. Under the terms of this settlement the lands were reconveyed to Marshall, but the oil and gas leases executed by Arnold, Hymans, and Lawson, after they had received their conveyances from Marshall while a minor, were ratified and confirmed by the guardian of Marshall and the agreement of settlement approved by the county court of Creek county. Marshall, under the compromise settlement, was to receive one-fourth of the royalties accruing upon his lands under the leases which had been executed by Hymans and Lawson.

The guardian of Marshall, thereafter, on the 24th day of August, 1915, assigned and quitclaimed to the defendant Tidal Oil Company all the oil and gas mining rights and privileges in and to the lands in controversy, reserving to the minor allottee one-fourth of the one-eighth royalties and the remaining three-fourths of the royalties to be paid to Arnold. This contract was approved on the same date by the county court of Creek county.

On January 22, 1916, while Marshall was still under guardianship as an incompetent, the plaintiff, Flanagan, in this action purchased the lands from Marshall under warranty deed, and it is conceded that this deed is void. It is admitted by the parties that on October 13, 1916, after Marshall had been discharged from guardianship and had reached the age of majority, he executed to the plaintiff, Flanagan, a quitclaim deed conveying to him the lands in controversy.

The first proposition argued by counsel for the Tidal Oil Company and Eleanor Arnold is that Flanagan could not maintain this action to quiet title under section 4927, Revised Laws 1910, for the reason he was not in the actual possession of the lands on the date of the institution of the action. There is no merit in this contention. This section of the statute, supra, was amended by c. 10, Session Laws 1910-11, p. 25, which section as amended permits a party to maintain an action to quiet title to real property out of possession by joining with it an action to recover possession. The section of the statute as amended reads as follows:

"An action may be brought by any person in possession by himself or tenant of real property, against any person who claims an estate or any interest therein adverse to him, for the purpose of determining such adverse estate or interest, and such action may be joined with an action to recover possession of such real property by any person not in possession."

This court, in the case of Koch et al. v. Deere, 50 Okla. 873, 150 Pac. 1102, construed this section of the statute as amended, and held that the plaintiff out of possession at the time the action was instituted had a right to bring the action to quiet title and for possession. There is no good reason why this should not be the rule. If a party has title to lands and the lands are in possession of some party without title, the party having the title should have the right to maintain an action to quiet title and for possession against any person asserting an adverse interest to the property. This court has frequently announced the rule that a lessor, who owns and is in possession of the fee in premises, may maintain an action against an oil and gas lessee, who is in possession of the premises operating the lease, to recover possession and to quiet title thereto. Strange v. Hicks, 78 Okla. 1, 188 Pac. 347; Indiana Oil, Gas & Development Co. v. McCrory, 42 Okla. 13, 140 Pac. 610; Blackwell Oil & Gas Co. v. Whitesides, 71 Oklahoma, 174 Pac. 573; Pelham Pet. Co. v. North, 78 Okla. 39, 188 Pac. 1069; Paraffine Oil Co. v. Cruce, 63 Okla. 95, 162 Pac. 716.

The second contention made by counsel for plaintiffs in error is that Flanagan purchased the lands under a quitclaim deed and took title subject to the rights of the defendants. We readily concur in this contention that Flanagan, having become the owner of the lands under a quitclaim deed, took the title subject to all defects and incumbrances affecting the title of the lands. But we are of the opinion that the instruments and conveyances under which the defendants assert an interest in the lands are absolutely void, and, being absolutely void, are without any legal effect. No right may be found on an absolutely void instrument. Conveyances executed and made in violation of a positive statute are void and ineffectual to bind the parties to such contracts. Hunt v. Rawleigh Medical Co., 71 Oklahoma, 176 Pac. 410; Missouri Fidelity & Casualty Co. v. Scott et al., 72 Oklahoma, 178 Pac. 122; Brooks v. Watkins Medical Co., 81 Okla. 81, 196 Pac. 956; Cumberland Tel. & Tel. Co. v. City of Evansville, 127 Fed. 197; Allen v. City of Davenport, 132 Fed. 216.

A quitclaim deed, under section 1161, Revised Laws 1910, executed in accordance with the statutes applicable to the same, conveys all of the title and interests of the maker thereof in and to the lands described in such deed. It is clear that Marshall by his quitclaim deed conveyed all of the interest he had in the lands in controversy. Therefore, it necessarily follows that if the conveyances executed by him while a minor and the judgment of the district court of Creek county and the contracts of settlement made by his guardians with the approval of the county court of Creek county are void, the judgment of the trial court decreeing Flanagan to have the legal and equitable title in and to the lands was correct. It is no longer on open question in this jurisdiction that the marriage of an Indian minor will not operate to remove the disabilities of minority so as to vest it with power to convey its allotted lands. It is also settled that the district courts of this state are without jurisdiction to enter an order conferring majority rights upon an Indian minor vesting such minor with authority to convey its allotted lands. Jefferson v. Winkler, 26 Okla. 653, 110 Pac. 755; Tirey v. Darneal, 37 Okla. 606, 133 Pac. 614; Bell v. Fitzpatrick, 53 Okla. 574, 157 Pac. 334; McKeever v. Carter, 53 Okla. 360, 157 Pac. 56; Allison v. Crummey, 64 Okla. 20, 166 Pac. 691; Crow v. Hardridge, 73 Oklahoma, 175 Pac. 115; Smith v. Williams, 78 Okla. 297, 190 Pac. 555.

We have no difficulty in arriving at the conclusion that the judgment of the district court of Creek county in the action instituted by Robert Marshall had no jurisdiction to divest Robert Marshall of title to his allotted lands by a decree quieting title in the defendants in the action. The title of the defendants was based upon absolutely void conveyances made and executed by Robert Marshall while a minor, as disclosed by the enrollment records. Furthermore, it appeared from the pleadings filed in the action instituted by Marshall in the district court of Creek county that the lands were the allotment of an Indian minor. Therefore, it is clear the district court of Creek county was without jurisdiction to convey the lands to the defendants by a decree purporting to quiet the title of the defendants. The record discloses that the defendants had no title to be quieted. This situation placed the lands, the subject of the action, beyond the jurisdiction of the district court of Creek county to enter a judgment, the effect of which was to alienate the lands for the minor allottee. It appearing on the face of the pleadings in the action instituted by Robert Marshall against the defendants, Arnold et al., that the lands involved in the action were the allotted lands of an Indian minor allottee and that the allottee was still a minor, who had never been divested of his title to the lands in a regular probate proceeding as prescribed by law, it is plain that the district court of Creek county was without jurisdiction to enter a judgment which in effect divested such minor allottee of title to the lands, thereby effecting an alienation of the lands in a manner unauthorized by law. Such a judgment was an attempt to divest the minor allottee of his property without due process of law.

The Supreme Court of the United States, in the case of Scott v. McNeal, 154 U. S. 32, 38 L. Ed. 896, in an opinion delivered by Mr. Justice Gray, held:

"No judgment of a court is due process of law if rendered without jurisdiction in the court."

In the case of Scott v. McNeal, supra, the court held the appointment of an administrator upon the estate of a person, who in fact was alive, and the sale of his property by such administrator was absolutely void, for the reason that the court was without jurisdiction to appoint an administrator over the estate of a live person. The reason for the rule is that a court cannot enter a valid judgment in a cause where it has no

jurisdiction of the subject of the action. Pennoyer v. Neff, 95 U. S. 714. 24 L. Ed. 565.

In the action of Marshall against Arnold et al., had there been an issue joined as to whether Marshall was of age at the time of the execution of the conveyance to the defendants and there had been an adjudication by the court upon the trial of the action upon a bona fide issue as to his age, and the court had determined that Marshall was an adult on the date of the execution of the conveyances, such a decree unappealed from, not reversed or vacated in the manner provided by law, would be res adjudicata upon the issue. But the pleadings of the respective parties in the action by Marshall disclosed that the lands in controversy were, at the time of the rendition of the judgment, the allotted lands of an Indian minor who had never been divested of his title in the manner prescribed by law.

Under section 6 of the act of Congress, May 27, 1908, 35 Stat. at Large, 312, the persons and properties of minor allottees of the Five Civilized Tribes are subject to the jurisdiction of the probate courts of Oklahoma, and by section 2 of said act it is specifically provided who are minors as used in the act, which includes males under the age of 21 years and females under the age of 18 years.

It has been the uniform holding of this court that the minority imposed upon Indian allottees within the age prescribed in section 2 of the act, supra, is in the nature of a restriction on the alienation of such allottees' lands, and title can only be acquired to such lands by a regular probate proceeding had in accordance with the statutes in the proper county court of the state. Any deed, instrument, or contract by which an interest in such lands is attempted to be conveyed, not executed in accordance with the law authorizing such conveyances, is in violation of the law; therefore, contrary to public policy, absolutely void and ineffectual as a basis of title by estoppel or otherwise. Collins Inv. Co. v. Beard, 46 Okla. 310, 148 Pac. 846; Bell v. Fitzpatrick, 53 Okla. 574, 157 Pac. 334; Brewer v. Dodson, 60 Okla. 81, 159 Pac. 329; Brewer v. Perryman, 62 Okla. 176, 162 Pac. 791; Truskett v. Closser, 198 Fed. 835; Priddy v. Thompson, 204 Fed. 955; Barbre v. Hood, 228 Fed. 658; Truskett v. Closser, 236 U. S. 23, 59 L. Ed. 549.

Counsel for the plaintiffs in error very earnestly insist that, although the judgment of the district court of Creek county quieting the title to the lands in Arnold, Hymans, and Lawson be void, this fact does not invalidate the compromise settlements between the guardian of Robert Marshall and Arnold approved by the probate court of Creek county. In support of this contention, counsel cite the rule announced in 8 Cyc. p. 505, as follows:

"The rule is well settled that an agreement or compromise is supported by a sufficient consideration where it is in settlement * * * of a claim which is disputed or where it is in settlement of a claim which is doubtful."

Many other authorities are cited in support of this rule.

We have no fault to find with this rule of law, but the rule has no application to the facts in the case at bar. The guardians of Marshall and Arnold, Hymans. and Lawson in entering into the compromise agreements were attempting to make agreements conveying an interest in restricted allotted Indian lands. Such lands may not be conveyed or title acquired except in the manner prescribed by law.

Counsel in the oral argument, or in the brief, have not pointed out any statute authorizing the title or an interest in such lands to be acquired in the manner as disclosed by this record. It is true, the guardian of an incompetent or minor may lease the lands of his ward for oil and gas purposes in the manner prescribed by law and under the rules of this court, which have been held to have the force and effect of a statute where the same is not in conflict with a statute. Winona Oil Company v. Barnes, 83 Okla. 253. 200 Pac. 981; Carlile et al. v. National Oil & Development Co. et al., 83 Okla. 217, 201 Pac. 377. Our attention has not been directed to any statute authorizing the making of such compromise agreements as the record discloses were entered into in the instant case.

In the case of Goodrum v. Buffalo, 162 Fed. 817, the Circuit Court of Appeals for the Eighth Circuit held:

"* * * that any and all schemes and devices resorted to for the purpose of acquiring title to the Indian allotments during the period of such limitation are abortive; and this for the palpable reason that it is a period of absolute disability on the part of the Indian to alienate his land."

In the case of Goodrum v. Buffalo, supra. the question involved was the validity of a judgment rendered in an action brought by an Indian to recover his allotment, the judgment being rendered upon an agreed

statement of facts against the Indian. The court held that the judgment was not a bar or an estoppel against the Indian afterwards recovering his lands in an ejectment action. The court in the opinion said:

"If the Indian could create no estoppel against himself or herself by deed of conveyance, how could he or she create an estoppel by consenting to a judgment as the basis of an estoppel, effectual to alienate the land in direct contravention of the act of Congress. * * *

"The disability of these Indians is imposed by statute. It must, therefore, logically and necessarily follow that the record and judgment of a court, disclosing on their face that the disqualified Indian was entering into an agreement for submission of the question of his right to dispose of these lands, was in nowise different from such a proceeding participated in by a minor infant. It is a wholesome rule of law that a party may not accomplish by indirection that which he could not do directly. * * *

"It should be understood once for all that no scheme or device, however ingenious or plausible, concocted by any person, can avail to divest the Indians of the title to their allotted lands within the period of limitation prescribed by Congress."

Parties in dealing with restricted Indians with respect to restricted allotted lands will not be permitted to secure conveyances in violation of applicable statutes prescribing the manner by which such lands may be alienated and then institute litigation and make compromise agreements with reference to such fraudulent and void transactions in furtherance of a scheme to acquire title to such lands in a manner not authorized by law. Such a course of conduct, if sanctioned by the courts, would permit parties with impunity to defeat the very purpose of legislation enacted by the Congress for the protection of such Indian allottees.

The authorities cited by counsel supporting the rule that a guardian may release and compromise pursuant to the authority of the probate court suits of his ward and compound or release a debt due his ward, in no way conflict with the rule announced in the case of Goodman v. Buffalo, supra, and adhered to herein. The cases cited by counsel supporting the rule as announced in 21 Cyc. p. 74 ordinarily have application to cases where the guardian has in good faith, under the direction and approval of the probate court. settled and compromised a bona fide controversy involving personal property, such as the collection of a debt, but none of the cases cited have any application to controversies involving restricted Indian lands.

It is insisted that in Markham v. Dugger. 34 Okla. 492, 126 Pac. 190, the court held that such a judgment as was rendered by the district court of Creek county in the action between Marshall and Arnold et al. is valid. and the Tidal Oil Company, having acquired its leases subsequent to this decision, had a right to rely upon the rule as announced in the case; that a rule of property was established by the decision. We have examined the case of Markham v. Dugger, and we do not believe it sustains the contention made by counsel for plaintiffs in error. Commissioner Ames, speaking for the court in Markham v. Dugger, supra, said:

"There is no dispute about the court having had jurisdiction of the persons of both parties. There is no dispute about the court having had jurisdiction of the subject-matter. * * *"

It is clear no question of jurisdiction was raised in the case. This court is committed to the rule that no rule of property may exist to render valid conveyances made in violation of a statute or of a governmental policy. Gannon v. Johnson et al., 40 Okla. 694, 140 Pac. 430. 243 U. S. 108, 61 L. Ed. 625.

Plaintiffs in error invoke the doctrine of estoppel against the defendant in error. This rule is invoked because Flanagan, after receiving his first deed January 22, 1916, accepted one-fourth of the royalties due under the leases of the Tidal Oil Company, and until October 13, 1916, when he received his quitclaim deed. It is insisted he acted inconsistently with his present attitude. The evidence discloses that Flanagan, prior to the time he procured his quitclaim deed from the allottee, Marshall, notified the Tidal Oil Company that its title in the lands was defective, and he suggested that all interested parties take steps to secure title to the lands. The Tidal Oil Company refused to take any steps towards procuring a better title than it had to the lands. The fact that both the Tidal Oil Company and Flanagan were unlawfully in possession of the allotment of Marshall prior to October 13, 1916, and as disclosed by the record naked trespassers upon the land, and that one of the trespassers, Flanagan, discovered that the lands were being unlawfully occupied by them, can in no way preclude Flanagan from purchasing the outstanding title. In this situation, it is clear that the fact that he jointly with the Tidal Oil Company unlawfully occupied the lands prior to the date of the execution of his quitclaim deed. which conveyed to him the legal title to the lands. does not constitute an estoppel against Flana-

gan in an action for the possession of the lands. The very essence of an estoppel is that a person claiming its benefits must have been induced to do the thing he did do, or to have altered his situation, relying upon the conduct of the party against whom the doctrine is invoked. Williamson-Halsell-Frazier Company v. King, 58 Okla. 120, 158 Pac. 1142; Condit v. Condit, 66 Okla. 215, 168 Pac. 456; Bragdon v. McShea, 26 Okla. 35. 107 Pac. 916; 21 C. J. 1120. No action of Flanagan's is suggested which caused the Tidal Oil Company to change its position to its injury. We find no facts in the record upon which an estoppel may be invoked.

Both parties to this action contend that the equities are on their side of the controversy. Upon a careful review of the record, we are of opinion that very little equity exists in favor of either party to this action, and our conclusion is arrived at strictly upon the legal questions presented. Quite a different question might be presented if Marshall, the allottee of the lands, were a party to this action seeking to avoid the conveyances of both parties upon equitable grounds.

Counsel for the plaintiffs in error insist that the trial court erred in refusing to permit them to show what was the total cost of the production of all of the oil produced by them under their lease. The Tidal Oil Company, one of the plaintiffs in error, was not entitled to show the total cost of a production during the entire time it occupied the lands under its lease. The trial court only decreed the defendant in error was entitled to the value of the oil produced since the date of his quitclaim deed. dated October 13, 1916, and under the rule announced in Barnes v. Winona Oil Company, 83 Okla. 258, 200 Pac. 981, and Zelma Oil Company et al. v. Nemo Oil Company et al., 84 Okla. 217, 203 Pac. 203. the plaintiff in error was entitled to an offset against the judgment, the cost of operating the premises from October 13, 1916, to the date of the judgment. The record discloses this amount to be $20,310.09.

We conclude that the judgment of the trial court should be modified by allowing the plaintiff in error credit for $20,310.09 upon the judgment rendered in favor of the defendant in error of $108,140.91. The judgment of the trial court, as modified, is affirmed.

HARRISON, C. J., and KANE, JOHNSON, and NICHOLSON, JJ., concur.