## HOUSTON PRODUCTION CO. v. MECOM OIL CO. (No. 1850.)

Court of Civil Appeals of Texas. Beaumont. Dec. 31, 1929.

Rehearing Denied Jan. 8, 1930.

Baker, Botts, Parker & Garwood and C. L. Carter, all of Houston, and E. B. Pickett, Jr., of Liberty, for appellant.

J. Llewellyn and Smith, Combs & Matthews, all of Liberty, and Smith, Crawford & Combs, of Beaumont, for appellee.

WALKER, J. This appeal is a branch of Taylor v. Higgins Oil & Fuel Co. which was before us at a former term and affirmed in part, but as to the parties to this appeal reversed and remanded on the issue of "improvements." On the former appeal, appellee herein complained of the instructed verdict against it on this issue. It was our conclusion that appellee's right to recover the cost of producing the oil in question was raised by the pleadings and evidence, and the case was reversed and remanded for a new trial on that single issue. All the pertinent facts of the original case, and our conclusions thereon, in so far as they relate to the issue now before us, are reflected by our opinion reported in Taylor v. Higgins Oil & Fuel Co., 2 S.W.(2d) 288, 304, to which we refer, and which we hereby adopt as a part of this opinion.

When the case went back for trial under our mandate, appellee herein filed an amended pleading, which in no way changed the nature of its cause of action, but had the effect of presenting this one issue, to the exclusion of all other issues adjudicated by the former appeal. The cost of the improvements was fixed by agreement, as reflected on the former appeal and brought forward on this appeal, at $20,216.90. The case went to the jury under our mandate on the following question, which was answered in the affirmative:

"Did H. Mecom, acting as president and general manager of Mecom Oil Company, at the time he drilled the well and undertook to develop the land described in plaintiff's petition, honestly and in good faith believe, on all the facts before him, that said company owned the lease on said land and had the right to develop it? Answer Yes or No."

On this verdict, judgment was entered in appellee's favor.

We do not understand that appellant's assignments question the sufficiency of the evidence to sustain the verdict as a fact issue. It is appellant's contention that as a matter of law, on the facts of this case, regardless of appellee's honest belief and good faith, it was not entitled to judgment, and that verdict should have been instructed in its favor. Briefly summarized, its propositions are as follows: First, this action not being based on the statute, but on general equitable principles, no cause of action existed in appellee's favor; second and third, appellee having failed to allege and prove that the "valuable improvements" enhanced the value of the premises, it could not recover, and in no event could recover beyond the enhanced value of the improvements, and on this issue there was no proof; fourth, to recover, it was essential that appellee make the improvements in good faith, while in actual possession of the property adversely to the true owner, which possession must be under color of title; fifth, it was not only essential that appellee have a reasonable ground for its belief that it was the true owner of the land, but must have been ignorant that its title was contested by one claiming a better right; sixth, appellee could not recover for improvements made after actual notice of the assertion of claim by the true owner, especially after the true owner had asserted its claim by suit, and in this case all improvements were made by appellee after suit had been filed upon the title; seventh, appellee having drilled its well after notice of appellant's claim and after suit had been filed, and after appellant had served it with written notice of its claim and that appellant would drill the well at its peril, and with no actual adverse possession by appellant until possession was taken for the purpose of drilling the well, under no "possible theory" was it entitled to compensation for the improvements sued for; eighth, appellee, being in possession of and

having knowledge of all the facts of its title, as well as of the title of appellant, could not in law make the improvements sued for in good faith.

On the former appeal, appellant urged practically these same propositions in support of its instructed verdict. We overruled these contentions, summarizing the facts and announcing the law thereon, saying:

"The trial court erred in instructing a verdict against appellants on their claim for improvements made in good faith in developing the land in controversy for oil. It was agreed that appellants expended $20,216.90 for that purpose; that this was a reasonable expense; and that much more than that amount had been realized from the efforts of appellants. In support of their plea of improvements in good faith, appellants offered testimony clearly raising the issue in their favor, that is, that they were not willful trespassers and honestly believed that their title was superior to that of appellees, but their testimony showed that they knew of every fact affecting their rights or interest in the land, as well as the rights and interests of the appellee Houston 'Production Company. On this statement of the evidence, in view of the construction that we have given the entire record, as reflected by our opinion above, appellants' contention of good faith rests upon the sole ground that they honestly misjudged the law. As sustaining the trial court, the appellee Houston Production Company cites Pittsburgh & W. Va. Gas Co. v. Pentress Gas Co., 84 W. Va. 449, 100 S. E. 296, 7 A. L. R. 901, where the court said:

"'The defendants contend that they were not willful trespassers, because they honestly believed that their title was superior to that of the plaintiffs. They were cognizant of every fact affecting their rights or interests in the lands, as well as the rights and interests of the plaintiffs, and their contention of good faith rests upon the sole ground that they honestly misjudged the law. They believed that under the law the existing facts, of which they were fully informed, gave them the superior right. * * * Entire good faith, it occurs to us, would have dictated to them that the proper course would be to wait until the controversy had been finally determined before expending large sums of money in drilling upon the land.'

"In many cases the proposition quoted would be directly in point and would control the disposition of the case, but not in this case. The strip of land in controversy was only 40 varas wide. Regardless of the extent of appellants' rights, whether they were correct in their contention or not, as the land adjacent to them was being developed, unless they had undertaken to develop this strip of land, the oil thereunder could and might have been drilled out, leaving them nothing but barren sand and a naked victory, had they been successful. That being the case, if they honestly believed on all the facts before them that they owned the land and in good faith undertook to develop it, they should be protected to the extent of the expenses incurred, inasmuch as the value of the oil taken from the land vastly exceeds these expenses. In doing so, they have not injured appellees, because development was necessary to bring the oil to the surface. In recompensing appellants, appellees will not be punished, because they are paying appellants only what they would have had to pay out to have the land developed. Of course, if appellants were willful trespassers, the punishment meted out to them by the law is the loss of the cost of their development, but that issue should be decided by the jury."

In reviewing this opinion, the Texas Law Review, June, 1928, on page 547, concluded that we had correctly disposed of this issue. The same proposition, as it related to the cost of the production of oil, as against a disputed title, was before the Supreme Court of Oklahoma in Barnes v. Winona Oil Co., 83 Okl. 253, 200 P. 985, 987, 23 A. L. R. 189; Zelma Oil Co. v. Nemo Oil Co., 84 Okl. 217, 203 P. 203; Woodworth v. Franklin, 85 Okl. 27, 204 P. 452, 462, 27 A. L. R. 590; Mullendore v. Minnehoma, 233 P. 1051. As we understand these decisions, the Supreme Court of Oklahoma has announced the same proposition announced by us. In the Barnes Case it was said:

"In our judgment what would amount to a willful taking of property applicable to persons in possession of land producing mineral ores therefrom or cutting timber on the land is not applicable to a person in possession of land producing oil and gas therefrom. The reason for the rule is very apparent. If a person in possession under a mining lease is producing mineral ore therefrom and has notice that the landlord considered the lease invalid, or that a third party claims a superior lease upon the land, the party might cease mining the ore, or from cutting the timber until the title to the ore or timber is determined, without irreparable injury either to the landlord or the lessee, but in case of a person in possession of land producing oil and gas therefrom a different condition exists. If the party in possession shuts in the wells, the oil and gas is liable to be drained by adjacent landowners or has the risk of salt water ruining the wells and in many other ways the wells may be ruined by failure to operate or to produce the oil or gas therefrom, thereby causing irreparable damage to the property. It is essential to produce the oil and gas to protect the interest of all the parties, and to hold that the further operation of said lease by the person in possession would amount to a willful taking and appropriation of the property of another would be placing too narrow a construction on the word 'wilful.' "

In the Woodworth Case, appellee Franklin,

as did appellee here, produced the oil with knowledge that his lease was being contested, and with knowledge of every fact, not only of his title, but of the title of appellants. His lease was annulled, but he was allowed the cost of production. The court said:

"Having carefully considered the petition of the defendant in error for a rehearing in this cause, we are satisfied that the former opinion herein is correct, and the petition for rehearing is therefore denied. However, we are of the opinion that said cause should be remanded, with directions to the trial court to enter judgment in favor of the plaintiffs in error [Woodworth] and against said defendant in error, canceling the contract between E. E. Evans and the defendant in error (Franklin), and that a proper accounting be had between the parties hereto, and judgment rendered in favor of the plaintiffs in error * * * from the sale of oil or gas from the premises involved, less the actual necessary expenses by him incurred in producing and marketing said oil or gas, and less the fair and reasonable value of any equipment necessary to remain in or about the wells on said premises. And it is so ordered."

In reviewing Taylor v. Higgins, the Texas Law Review, as cited supra, said: "Three situations were possible in the principal case, and it is not clearly shown just which were present. The improvements and expenditures may have been made: (1) after knowledge of material facts concerning the defect in title, but no adverse claim having been asserted; (2) after the adverse claim was actually asserted by the true owner; (3) after suit was brought to determine the right to possession."

In this case the improvements were made after the adverse claim had been actually asserted by the true owner, and after suit had been brought to determine the true status of the title and the right of possession. We make this additional conclusion, in order that appellant may have full advantage of every fact that could affect its liability and that is important on its propositions as above summarized.

Appellant insists that we were in error in our former opinion, and on this appeal that we should reverse our holding and render judgment for it as a matter of law. Both parties have suggested. that we give a detailed statement of the pleadings. This we do not do because, being thoroughly satisfied with our former holding, and having there adjudged the pleadings sufficient to raise the issue of good faith on the part of appellant, the issue, as far as this court is concerned, is res adjudicata. Neither party has suggested that we make a statement of the evidence on the issue of good faith as a

fact issue. In fact, as already stated, appellant concedes that the evidence was sufficient to support the jury's answer to the question submitted provided, as a matter of law, it was not entitled to an instructed verdict.

From what has been said, it follows that the judgment of the trial court should be affirmed; and it is accordingly so ordered.