**BROWN v. SHAFFER et al.**

No. 2610.

Court of Civil Appeals of Texas. Beaumont.

Jan. 24, 1935.

Rehearing Denied Feb. 13, 1935.

C. M. Hightower, of Houston, and Crawford & Crawford, of Conroe, for appellant.

Pitts & Liles, Morris, Clark & Darden, and Foster & Williams, all of Conroe, Dean & Humphrey, of Huntsville, and Llewellyn & Daugherty, of Liberty, for appellees.

WALKER, Chief Justice.

For a general statement of the nature of this suit reference is made to the opinion on a former appeal, Shaffer v. Brown (Tex. Civ. App.) 59 S.W.(2d) 854. On remand Brown, appellee on the former appeal, amended his answer by filing his fifth amended original answer, pleading not guilty and special defenses, against which the lower court sustained a general demurrer. The appeal was prosecuted by Brown from that order.

Appellees S. O. Shaffer and one intervener would support the judgment by their counter proposition that the opinion on the former appeal is "the law of the case." The following conclusions answer this contention: First, while it is the duty of the trial court to follow and apply "the law of the case," as announced in the opinion of the Court of Civil Appeals on reversal and remand, on a second appeal the principles of "the law of the case" have but little, if any, application to the Courts of Civil Appeals. This conclusion has absolute support in the judgment of the Commission of Appeals in Houston Production Co. v. Mecom Oil Co., 62 S.W.(2d) 75, a branch of Taylor v. Higgins Oil & Fuel Co. (Tex. Civ. App.) 2 S.W.(2d) 288, which this court affirmed in part and in part reversed and remanded, with instructions. On remand the case was tried under our instructions, with judgment on the verdict of the jury for Mecom Oil Company, which was affirmed by us. Houston Production Co. v. Mecom Oil Co., 22 S.W.(2d) 973. A writ of error was granted by the Supreme Court [62 S.W.(2d) 75], and the judgments of the lower court and of this court were reversed and rendered in favor of plaintiff in error, Houston Production Company, and that notwithstanding Houston Production Company had not sued out a writ of error against our judgment of reversal and remand, but had acquiesced therein, and under our judgment had received the proceeds of the oil produced from the land in controversy in the sum of more than a quarter of a million dollars. Again, in reversing and remanding Brooks v. Zorn, 24 S.W.(2d) 742, this court overruled the construction given by the trial court to certain written instruments, and against our judgment the appellees therein filed with the Supreme Court their petition for writ of error, which was dismissed for want of jurisdiction. On remand the lower court submitted the case to the jury on the issues directed by our opinion, but, adhering to his original construction of the written instrument, entered judgment for Zorn, who had succeeded to the rights of the original appellees, notwithstanding the verdict of the jury. On appeal we adhered to our original construction of the written instrument, and reversed the judgment of the lower court and rendered judg-

ment for appellant. Notwithstanding, on the former appeal the Supreme Court had dismissed the petition for writ of error for want of jurisdiction; on the second appeal it granted the petition for writ of error under the identical assignments formerly adjudicated. On these authorities it must be said that the proposition of "the law of the case," as announced by the Supreme Court in Frankland v. Cassaday, 62 Tex. 418, has no application to judgments of the Courts of Civil Appeals within the jurisdiction of the Supreme Court; but, on a second appeal, the case must be decided on propositions of "the law of the land" and not of "the law of the case." Second, the remand was predicated upon the pleadings and the evidence then before the court, suggesting the omissions in Brown's trial answer. Third, the remand was general, giving Brown the right to amend his answer if he so desired, and to offer evidence in support of his amended pleadings. Fourth, it is our further conclusion that, even conceding appellees' propositions of "the law of the case," nothing said on the former appeal supports the general demurrer. It is therefore our duty to examine appellant's amended answer to determine whether or not it constituted a defense good in law to Shaffer's cause of action for the land in controversy, as evidenced by his petition in statutory form of trespass to try title.

Appellant first answered by plea of not guilty and then by a special plea to the following effect: Owning the land in fee simple, appellant sold it by warranty deed dated 12/11/1926 to one A. L. Ross for $1,000, evidenced by six promissory vendor's lien notes, the first note for $100 due one year after date, and the remaining five notes, each for $180, maturing serially two, three, four, five, and six years after date, both the deed and the notes retaining the vendor's lien to secure the payment of the notes. On the 10th day of April, 1928, appellant, owing the F. & M. State Bank of Conroe a note for $255, payable one year after that date, executed to the bank a transfer of the last five vendor's lien notes and of the superior title, retained by him in the land, to secure the payment of his note in the sum of $255. Prior to April 1, 1929, A. L. Ross and appellant orally agreed to rescind the executory contract of the sale of the land, and agreed that the title should be reinvested in appellant, on consideration that appellant pay his note to the bank in the sum of $255 and "hold the said A. L. Ross harmless against his liability" on the five notes held by the bank as collateral security for appellant's note. Under this

agreement Ross surrendered possession of the land to appellant, who entered thereon and made valuable improvements thereon to the amount of $76. In further execution of the agreement to rescind, A. L. Ross, on the same consideration, executed a deed in writing to appellant, conveying him the land, and delivered this deed to one J. H. Hudspeth, to be delivered by Hudspeth to appellant. Hudspeth retained the deed and refused to deliver it to appellant, and now has it in his possession or has destroyed it. At the time Hudspeth refused to deliver to appellant the Ross deed, he was advised of the details of the trade between appellant and Ross and the consideration for the execution of the deed. By reason of the facts thus pleaded, appellant was reinvested with absolute title to the land theretofore conveyed by him to Ross.

Second. After the consummation of the rescission between appellant and Ross, not being able to pay his note to the bank, appellant agreed with Hudspeth for him to pay the bank the note for $255, and, as part of this transaction, appellant agreed to sell to Hudspeth the five vendor's lien notes held by the bank. Under this agreement Hudspeth paid appellant's note to the bank, and the bank delivered appellant's note and the five vendor's lien notes to Hudspeth. Appellant then pleaded facts of fraud against Hudspeth, sufficient to avoid this transaction and to reinvest him with title to the vendor's lien notes, leaving Hudspeth holding the five vendor's lien notes only as security for the amount paid by him to the bank on appellant's account. In this connection, appellant pleaded facts showing that when Hudspeth purchased the notes he was fully advised of the fact that Ross had reconveyed the land to appellant and had been relieved by appellant from liability on the five vendor's lien notes. Appellant further pleaded a rescission between him and Hudspeth whereby Hudspeth reinvested him with title to the notes, and alternatively, if Hudspeth had not paid his note to the bank, which he alleged as a fact, that he, upon this rescission, went to the bank to pay off his $255 note and was not able to secure the same. Appellant then pleaded that Hudspeth, assuming to own the five vendor's lien notes and the superior title to the land, fraudulently sold the notes and the superior title to Shaffer, who acquired the notes from Hudspeth with actual knowledge of the fact that Ross had been relieved from liability thereon and had reconveyed the land to appellant and of the fraudulent transaction by which Hudspeth had acquired the notes from appellant, and also of the subse-

quent transaction between appellant and Hudspeth whereby Hudspeth had reinvested appellant with title to the notes. It was further alleged that Shaffer, fraudulently claiming to own the five vendor's lien notes and the superior title to the land, contracted with Ross to cancel and surrender him the notes on condition that Ross would convey to him the land in controversy, and that under this contract Ross conveyed the land to Shaffer, and Shaffer, in fraud of appellant's rights, surrendered the notes to Ross.

The title acquired by Shaffer under the transactions detailed was the title adjudicated in his favor under his plea in trespass to try title, and was the basis of the judgment of the lower court awarding him the land. After the general demurrer had been sustained against the plea of not guilty and the special defenses, appellant dismissed a cross-action against Shaffer whereby he prayed for an affirmative recovery of the land. A third party intervened whose rights were identical with those of Shaffer.

▮ Appellant contends that, independent of the legal sufficiency of his special answer, the plea of not guilty presented a good defense in no way subject to the general demurrer. This contention is overruled. Under the facts pleaded by appellant, Ross was the common source of title to the land, and therefore, under his plea of not guilty, appellant was limited to the special defenses pleaded by him. Since appellant had made Ross the common source, Shaffer, as plaintiff in trespass to try title, was entitled to recover on proof of a superior title under Ross. This issue was to be determined by the attack made by appellant against Shaffer's title. The plea of not guilty was therefore merged into the special answer. So the sufficiency of appellant's defense was directly challenged by the general demurrer. Norman v. Morehouse (Tex. Civ. App.) 243 S. W. 1104; St. Louis, A. & T. Railway Co. v. Whitaker, 68 Tex. 630, 5 S. W. 448, 449. See, also, Gulf Production Co. v. Spear (Tex. Civ. App.) 76 S.W.(2d) 558.

We concede the counter propositions: (a) The facts pleaded by appellant vested title to the five vendor's lien notes in Hudspeth unless Hudspeth's title was defeated by the allegations of rescission and fraud; (b) if Hudspeth owned the notes, he conveyed them by good title to Shaffer; (c) if the facts pleaded by the answer amounted to a total failure of consideration from appellant to Ross, Ross had the right to rescind his oral and written contracts of reconveyance; and (d) if Ross had the right to rescind, and if Shaffer was the owner of the notes, Ross' conveyance to Shaffer and Shaffer's cancellation of the note vested Shaffer with the absolute title to the land.

▮▮ Even on the assumed facts appellant says that Shaffer did not acquire the absolute title from Ross because, though he owned the notes, he did not own the superior title to the land. If Shaffer owned the notes and Ross had the right of rescission and did rescind, appellant held the legal title merely as trustee for Shaffer and had no beneficial interest therein, Humphreys-Mexia Co. v. Gammon, 113 S. W. 247, 254 S. W. 296, 29 A. L. R. 607; so, on the facts assumed, the conveyance to Shaffer vested Ross's title in him and extinguished the title held for him by appellant, thereby vesting him with the absolute title to the land.

But, on the facts pleaded in the special answer, the consideration for the reconveyance from Ross to appellant had not failed in whole or in part. Ross knew that his notes were held by the bank as collateral for appellant's note. The consideration was that appellant would pay his note to the bank and protect Ross from liability on the vendor's lien notes. What Brown could do personally, he could lawfully contract with Hudspeth to do for him, that is, to pay to the bank for his account the $255 note. Appellant pleaded that Hudspeth paid this note to the bank for his account, thereby discharging that portion of the consideration expressly agreed upon in the rescission between appellant and Ross. The second element of the consideration was that appellant was "to hold harmless" Ross on the five vendor's lien notes. The facts pleaded constituted a full and complete discharge of this obligation, in that Hudspeth acquired the five vendor's lien notes with full knowledge of the rescission and that Ross had been released, and Shaffer acquired the notes from Hudspeth with actual knowledge of the same facts. It follows that, in acquiring the notes from appellant, Hudspeth and appellee took them knowing that Ross had been released on a valuable consideration and that Ross no longer had any interest in the land. These facts constituted a perfect defense in favor of Ross to any demand that Hudspeth and Shaffer could assert against him as owners of the notes. Knowing that Ross had reconveyed the land to appellant and that he had been relieved from liability on the notes, Shaffer knew that Ross had no right of rescission, and therefore acquired no right against appellant by virtue of his deed from Ross.

Notwithstanding the rescission between Ross and appellant, appellant, as owner of the five vendor's lien notes, had the right to sell them to Hudspeth and he to Shaffer. Such a transfer after the rescission would give Hudspeth and Shaffer the ownership of the notes with appellant's liability for the amount thereof, secured by a lien on the land with the right of foreclosure. Wooten Grocer Co. v. Lubbock State Bank (Tex. Com. App.) 215 S. W. 835. So, even if Hudspeth and Shaffer acquired title to the notes, with knowledge of the rescission between Ross and appellant, Shaffer did not acquire title to the land by virtue of his deed from Ross.

It is our conclusion that the facts specially pleaded by appellant constituted a defense to Shaffer's cause of action in trespass to try title. Only the title was in issue. Neither party sought any relief on the notes as such. It follows that the judgment of the lower court should be reversed and the cause remanded for a new trial, and it is accordingly so ordered.

### On Rehearing.

On rehearing, appellant assigns error against our conclusions on appellees' propositions of rescission. In discussing these propositions, it is not our purpose to announce any proposition of substantive law to guide the lower court upon trial of this case; such conclusion, on the assignment of general demurrer, would be mere dicta. All we intended to hold was that, conceding appellees' theory of rescission, the petition was not subject to the general demurrer. The facts of this case, in so far as they relate to the law of rescission, are to be developed under the rulings of the lower court, without any instructions from us. Appellees have also filed motion for rehearing which has been carefully reviewed by us. Both motions are overruled.